IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CONCORDIA UNIVERSITY TEXAS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | Case No. 1:24-cv-176-RP |
| THE LUTHERAN CHURCH - MISSOURI | § | |
| SYNOD, an unincorporated association of | § | |
| Lutheran congregations, and THE LUTHERAN | § | |
| CHURCH - MISSOURI SYNOD, a Missouri | § | |
| Corporation, | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S MOTION TO REMAND

Plaintiff Concordia University Texas. ("CTX") submits this Motion to Remand asking that the Court remand this proceeding back to the 353rd District Court of Travis County, Texas as follows:

## I.    INTRODUCTION

1.    This dispute arises out of CTX's November 2022 amendment to its Articles of Incorporation and Bylaws to provide for corporate self-governance separate from the Lutheran Church – Missouri Synod. CTX filed suit on January 19, 2024 against Defendants the Lutheran Church – Missouri Synod, an unincorporated association of Lutheran Congregations ("Synod"), and the Lutheran Church – Missouri Synod, a Missouri Nonprofit Corporation ("LCMS") in Travis County, Texas District Court seeking declaratory relief under the Texas Uniform Declaratory Judgment Act.

2.      Under Texas Law, Synod is an unincorporated association with citizenship in Texas and with capacity to sue and be sued. However, Defendants removed this action on the basis of diversity jurisdiction claiming that, contrary to Synod's governing documents, Synod and LCMS are a singular entity, that Synod cannot be party to a lawsuit, and therefore Synod's citizenship in Texas does not control for diversity purposes.

3.      The Court should remand this lawsuit because: a) under Texas law, Synod has capacity to sue and be sued; b) Synod's citizenship in Texas prevents the Court from exercising diversity jurisdiction; c) by Defendants' own admission, Synod is a proper party in interest to this suit; and d) Synod is an indispensable party that must be joined.

## II.  **EXHIBITS**

4.      This motion is supported by exhibits from filings in *The Lutheran Church Missouri Synod, a Missouri non-profit corporation v. Christian et. al.*, Case No. 1:23-cv-1042-RP. Five exhibits are from LCMS's First Amended Complaint, and two exhibits are from CTX's Motion to Dismiss, filed concurrently with this motion. *See* Plaintiff's 1st Am. Complaint, *LCMS*, Case No. 1:23-cv-1042-RP (W. Dist. Tex., Feb. 29, 2024) (hereafter "**LCMS's Complaint**"); *see also Defendants' Motion to Dismiss*, *LCMS*, Case No. 1:23-cv-1042-RP (Apr. 3, 2024).

   a.  **Exhibit 1** – Concordia University Texas 1950 Charter – LCMS's Complaint Exhibit F ("1950 Charter").

   b.  **Exhibit 2** – Synod Bylaws – LCMS's Complaint Exhibit B ("Synod Bylaws").

   c.  **Exhibit 3** – Synod Constitution – LCMS's Complaint Exhibit A ("Synod Constitution").

   d.  **Exhibit 4** –Amended and Restated Articles of Incorporation of The Lutheran Church - Missouri Synod – LCMS's Complaint Exhibit C ("LCMS Articles of Incorporation").

   e.  **Exhibit 5** – Synod Board of Directors Policy Manual – Motion to Dismiss Exhibit 5.

   f.  **Exhibit 6 -** Synod Resolution 4-04, 2004 – LCMS's Complaint Exhibit D ("Resolution 4-04").

g. **Exhibit 7 –** Unopposed Motion for Leave to file an Amicus Brief, *Faith Bible Chapel International, a Colorado non-profit corporation v. Gregory Tucker*, (10th Cir., May 28, 2022) – Motion to Dismiss Exhibit 5.

Plaintiff respectfully requests the Court take judicial notice of the filings and attached exhibits in *LCMS v. Christian et. al.,* Case No. 1:23-cv-1042-RP. Fed. R. Ev. 201(b) (Courts may take judicial notice of facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.)

## III.  RULE 7.1 - DISCLOSURE STATEMENT

5.      CTX is a non-profit corporation incorporated in Texas. CTX is a Texas citizen.

6.      Synod is an unincorporated association of Lutheran Church – Missouri Synod ministers and congregations. Synod's membership congregations include Texas congregations and Synod is a Texas citizen.

7.      LCMS is a non-profit corporation incorporated in Missouri. LCMS is a Missouri citizen.

## IV.  FACTS

8.      The fact section of this motion identifies all relevant parties, provides an overview of the dispute and prior proceedings, and identifies Synod's interest in the litigation.

### a.  Parties

9.      CTX is a Lutheran university in Austin, Texas. CTX is one of several universities originally founded by members of churches associated with the predecessor to Synod. CTX was founded in the 1920s. **Petition** ¶ 6. The CTX nonprofit corporation was formed in 1950. **Petition** ¶ 11; **Ex. 1** p.1. CTX eventually adopted the name "Concordia University Texas".  **Petition** ¶ 9.

10.     There are two entities named "Lutheran Church – Missouri Synod": LCMS and Synod. LCMS is a Missouri nonprofit corporation. **Petition** ¶ 7; **Ex. 2** p.2 § 1.2.1(f). Synod is an unincorporated association of Lutheran Congregations. **Petition** ¶ 7; *see* **Ex. 2** p. 3 § 1.2.1(v).

11.    <u>Synod is an association with members in Texas and a governance structure created by its governing documents.</u> Synod's purpose is for Lutheran congregations to "join with one another in the Synod to support one another and work together in carrying out their commonly adopted objectives." **Ex. 2** p.1 § 1.1.1. Synod's bylaws define it as "the association of self-governing Lutheran congregations and all its agencies on the national and district level." **Ex. 2** p.3 § 1.2.1(v). Synod's members include both congregations and individual ordained ministers. **Ex. 3** p.2-3, Art. V; **Ex. 2** p.3, § 1.21(m). Synod divides its member congregations into districts, including a Texas District **Ex. 3** p.7, Art. XII; & **Ex. 2** p.5, § 1.3.6; LCMS's Complaint ¶¶ 29, 36, 45, 46, 65, 71, 81, *LCMS*, (No. 1:23-cv-1042-RP). Synod is led by a president, six vice presidents, a secretary, a board of directors, and other officers as required by Synod's Bylaws. LCMS's Complaint ¶ 14, *LCMS.,* Case No. 1:23-cv-1042-RP.

12.    <u>LCMS is a non-profit corporation created by Synod.</u> LCMS describes itself as a "civil law entity" that carries out Synod's "secular functions, including the ability to sue and be sued." **Notice of Removal,** ¶ 4. The Synod Bylaws define LCMS, or "Corporate Synod" as "the Missouri nonprofit corporation, including its offices, boards, commissions, and departments." **Ex. 2** p.2, § 1.2.1(f).

13.    <u>In its governing documents, Synod retains the rights and authorities of churches and organizations, including the right to own and convey property of every description</u>. In defining LCMS as a corporate entity, Synod's bylaws proclaim that "Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States, and the State of Missouri." **Ex. 2** p.2, § 1.21(m). Under its Constitution, Synod has the power "to purchase, hold, administer, and sell property of every description in the interest of the Synod", and can "accept,

4

hold, administer, and if deemed advisable, dispose of legacies, donations, commercial papers, and legal documents of every description in the interest of its work." **Ex. 3** p.2, Art. IV.

     **b.**  **The Dispute and Removal**

14.    <u>This dispute arises from actions taken by the CTX Board of Regents to modify the CTX governing documents.</u> On April 29, 2022, and again on November 8, 2022, the CTX Board of Regents modified CTX's bylaws and articles of incorporation. **Petition** ¶ 12. The amendments were necessary to secure its own 501(c)(3) tax status. **Petition** ¶ 13. The amendments also vest all governing authority of CTX in its Board of Regents and remove all references to the LCMS Handbook. **Petition** ¶¶ 14-19.

15.    <u>LCMS and Synod dispute the validity of the changes to CTX's governing documents</u>. LCMS and Synod assert that the changes: a) are null and void; b) adversely impact Synod's governance rights over CTX; c) resulted in the loss of Synod and LCMS's property interest in CTX's campus; and c) are a breach of fiduciary duties owed to LCMS and Synod by members by CTX and its board of regents. **Petition** ¶ 22. On this basis, LCMS filed a complaint in federal court seeking relief on behalf of both itself and Synod, though Synod was not made a party to that complaint. *See* LCMS's Complaint, *LCMS*, Case No. 1:23-cv-1042-RP.

16.    <u>CTX sought declaratory relief in Texas State courts</u>. On January 19, 2024, CTX filed suit in Travis County, Texas District Court against both Synod and LCMS. **Petition** ¶¶ 3-4. CTX sought declarations under the Texas Uniform Declaratory Judgment Act that:

       a.  CTX's Board of Regents had authority to amend CTX's bylaws and articles of incorporation and that the April and November 2022 amendments to each are valid;

       b.  After November 2022, neither Synod nor LCMS have the authority to elect regents to CTX's Board of Regents;

> c.  Neither CTX, nor any of its officers or regents, violated a fiduciary duty to Synod or LCMS;
>
> d.  Neither LCMS nor Synod have, or are entitled to, any property interest in CTX's property; and
>
> e.  Neither Synod nor LCMS are entitled to damages or compensation by CTX or its officers.

**Petition ¶ 23.**

17.    LCMS removed CTX's Petition to this Court based on diversity jurisdiction. LCMS asserts that based on the terms of Synod's bylaws, Synod is not a civil law entity separate and apart from LCMS. **Notice of Removal ¶ 4, Ex. A ¶** 4. LCMS further asserts that because Synod is not a separate entity, it should be disregarded for diversity purposes. **Notice of Removal ¶ 4.** For this reason, LCMS asserts this Court has jurisdiction over Plaintiff's petition. **Notice of Removal ¶ 8.** The Court should remand because Synod is a proper party that is an unincorporated association with members in Texas such that this Court lacks diversity jurisdiction.

  **c.  Synod's Interest in the Litigation**

18.    LCMS's Complaint and the Defendants' governing documents demonstrate Synod, and not LCMS, has an interest in this suit. LCMS's Complaint alleges several harms to Synod[1] that allegedly resulted from changes to CTX's governing documents as follows:

> a.  the express right of the Synod, through its national convention, to elect four members of the CTX BOR:[2]

---

[1] Defendants do not concede that any alleged right in LCMS's Complaint is in fact a "right", the loss of which can cause harm or be actionable by either Synod or LCMS. However, Synod and LCMS claim an existence of such rights necessitating CTX's suit for declaratory relief. CTX reserves the right to attack the merits of any claimed right or harm in other appropriate motions or pleadings as necessary.

[2] "BOR" refers to the Board of Regents.

      b.  the express right of the Texas District of the Synod, acting in convention, to elect four members of the CTX BOR;

      c.  the express right of the Praesidium of the Synod to appoint one member of the CTX BOR;

      d.  the express right to participate in the prior approval panel for the appointment of the President of CTX;

      e.  the express right to approve any changes to CTX governance documents;

      f.  the express right to effect ecclesiastical supervision over the doctrine taught and practiced in the institution, including prior approval of theological faculty and the removal, through ecclesiastical discipline, of rostered faculty and administration from office.

LCMS's Complaint ¶ 55, *LCMS*, (No. 1:23-cv-1042-RP). These mirror the declaratory relief sought by CTX. *Compare Id. with* **Petition** ¶ 23.

19.    <u>Any "rights" or "interest" of corporate governance over CTX do not belong to LCMS, but rather belong to Synod, its members, or its governing officers.</u>

      a.  *Election of members to CTX's Board of Regents*. The right, if any, to elect members to CTX's Board of Regents belongs to Synod, the Texas District of Synod members, and the Praesidium of Synod. *See e.g.* LCMS's Complaint ¶ 55(a)-(c), *LCMS*, (No. 1:23-cv-1042-RP); *see also* LCMS's Complaint ¶¶ 36, 41, *LCMS*, (No. 1:23-cv-1042-RP). This is confirmed by Synod's bylaws. **Ex. 2** p.145-46, §§ 3.10.6.2(1)-(5). Nowhere in LCMS's Complaint, or in Synod or LCMS's governing documents, is there any basis to claim that LCMS had a right to appoint any members to CTX's Board of Regents.

      b.  *Participation in the approval of CTX's President*. Synod, not LCMS, participated in the selection of CTX's President. *See* LCMS's Complaint ¶¶ 38, 71, *LCMS*, (No. 1:23-cv-1042-RP); *see also* **Ex. 2** p.151-52, § 3.10.6.6.2(b)(6) (Concordia University presidents prior approval panel consists of Synod's President, the district president, and the chair of the Board of the Concordia University System.) LCMS is not involved in

the prior approval committee, nor does it appear to be involved anywhere else in the

selection of a Concordia University president. *See* **Ex. 2**, p.151-53, § 3.10.6.6.2.

c.   *Approval of changes to CTX's governing documents.* Synod and its Commission on

Constitutional Matters ("CCM"), not LCMS, assert the right to prior approval of

changes to CTX's governing documents. LCMS's Complaint ¶¶ 8, 29, 30, 43, 70, 76,

77, *LCMS*, (No. 1:23-cv-1042-RP); *see also* **Ex. 2** p.121, § 3.9.2.2.3(a). The CCM is a

Synod Commission that is responsible only to the Synod and its governing parties.

LCMS's Complaint ¶¶ 46, *LCMS*, (No. 1:23-cv-1042-RP); **Ex. 2** p.1, § 1.2.1(c).

Neither LCMS's Complaint nor any parties' governing documents demonstrate that

LCMS had any right to approve CTX's governing documents.

d.   *Supervision of the doctrine taught and practiced at CTX.* Synod, its governing

directors, and its agents participated in the doctrine taught and practiced at CTX by

approving faculty members. LCMS's Complaint ¶¶ 38, *LCMS*, (No. 1:23-cv-1042-RP);

*see also* **Ex. 2** p.153, § 3.10.6.7.3 (Synod's President, chairman of Synod's Council of

Presidents, and a member of Concordia University System board approve appointments

of faculty.) LCMS is not involved in approving appointments of theological faculty.

*See **Id**.*

20.   <u>The claim by LCMS and Synod of entitlement to CTX's property, or compensation for its</u>

<u>loss, is based on an alleged failure of CTX to execute a reversionary interest to LCMS.</u> *See e.g.*

LCMS's Complaint ¶¶ 25, 60, *LCMS*, (No. 1:23-cv-1042-RP). According to LCMS's Complaint,

it is entitled to a reversionary interest in CTX property pursuant to Synod Resolution 4-04.

LCMS's Complaint ¶¶ 25, 60, *LCMS*, (No. 1:23-cv-1042-RP). However, Synod Resolution 4-04

discusses alleged ownership and reversionary rights of Synod, not LCMS.

21.   <u>According to Synod Resolution 4-04 reversionary interests should be executed in favor of Synod, not LCMS.</u> Specifically, Resolution 4-04 states:

> WHEREAS, ***The Synod*** owns the properties of all agencies of the Synod, including its institutions of higher education, regardless of how such properties are titled (Bylaw 3.51 i) ... That each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of a reverter ***in favor of the Synod***…

**Ex. 6** (*emphasis added*). Additionally, Synod property includes "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod [LCMS], its nominee, or an agency of Synod." **Ex. 2** p.3, § 1.2.1(r). Accordingly, if there is any reversionary interest in CTX's property, that interest belongs to Synod, not LCMS.

22.   <u>If any duties were breached as alleged by the Defendants, such duties were owed to Synod, not LCMS</u>. The Amended Complaint asserts that CTX and its Board of Regents are fiduciaries with duties owed to Synod. LCMS's Complaint ¶¶ 29, 36, 45, 46, 65, 71, 81, *LCMS*, (No. 1:23-cv-1042-RP). Other than conclusory and inferential statements, the Amended Complaint does not allege that CTX or members of its Board of Regents owe fiduciary duties to LCMS. *See e.g.* LCMS's Complaint ¶ 51, 69, *LCMS*, (No. 1:23-cv-1042-RP).

23.   <u>Despite assertions that both LCMS and Synod have experienced harm as a result of the changes to CTX's governing documents, LCMS seemingly seeks to subsume all of Synod's interest in this litigation</u>. According to its own documents, all rights and property interests alleged in the Amended Complaint belong to Synod. If any duties were owed, they were owed to Synod, not LCMS. Synod is a proper party in interest in this litigation and LCMS cannot claim that it is entitled to litigate Synod's interest in this Court without Synod being a party to this lawsuit.

## V.  <u>ARGUMENT</u>

24.    <u>The Court should remand Plaintiff's petition back to Texas State court</u>. Synod has capacity to sue and be sued under Texas law and is a proper party in interest. Synod is also an indispensable party. Its Texas citizenship, defined by its members in the State of Texas, prevents complete diversity jurisdiction. Therefore, the Court should remand for lack of subject matter jurisdiction.

### a.  <u>Standard of Review</u>

25.    <u>A district court has original jurisdiction of civil actions between diverse citizens</u>. Diversity jurisdiction is only vested in federal district courts when the controversy is "between citizens of different states." 28 USC § 1332(a)(1). The diversity of citizenship must be complete; one plaintiff cannot share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992).

26.    <u>Removal of state court proceedings on the basis of diversity jurisdiction is improper "if</u> <u>any of the parties in interest properly joined and served as defendants is a citizen of the State in</u> <u>which such an action is brought."</u> 28 USC § 1441(b)(2). Joinder is proper where there is a possibility of recovery by the plaintiff against the in-state defendant, or a reasonable basis for predicting recovery against an in-state defendant. *See Hicks v. Martinrea Auto. Structures (United States), Inc.*, 12 F.4th 511, 515 (5th Cir. 2021) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). If a plaintiff "has stated a claim against a nondiverse defendant upon which relief *may* be granted, a federal court is without jurisdiction – more precisely, without diversity jurisdiction – over the claim, and by extension any claim." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202 (5th Cir. 2016). Federal courts must resolve these questions by conducting a Rule 12(b)(6) type analysis. *Hicks*, 12 F.4th at 515. If a plaintiff's

complaint contains "enough facts to state a claim to relief that is plausible on its face," joinder of the nondiverse defendant was proper and the case must be remanded. *Id*.

27.    <u>"The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."</u> *Smallwood*¸ 385 F.3d at 575. Federal courts "should not sanction devices intended to prevent removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit state courts, in proper cases to retain their own jurisdiction." *Id*. at 573 (citation omitted). If at any time before final judgment, it appears that a court does not have jurisdiction over a removed action, that case must be remanded. 28 USC § 1447(c).

    **b.** **Synod is a non-diverse defendant and a proper party in interest to this suit.**

      **i.** **Synod Has Capacity to Sue and be Sued under Texas Law.**

28.    <u>A party's capacity to sue and be sued depends on the type of party</u>. For individuals not acting in representative capacity, capacity is determined by the law of the state in which the individual is domiciled. Fed. R. Civ. P. 17(b)(1). For corporations, it is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). For all other parties, it is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). Synod is not a corporation, therefore its capacity is determined by Texas law.

29.    <u>In Texas, unincorporated associations have the capacity to sue and be sued</u>. The Texas Business Organization Code states that a "[a] nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding or in an arbitration, mediation, or any other form of alternative dispute resolution." Tex. Bus. Org. Code § 252.007. A "nonprofit association" is defined as "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Org. Code § 252.001.

30.    <u>Churches are subject to the Texas Business Organizations Code.</u> While the First Amendment protects a freedom of belief, freedom of churches to act "remains subject to regulation for the protection of society." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303-04, 84 L. Ed. 1213, 60 S. Ct. 900 (1940)). As explained by Texas courts, this is because "churches and their congregations exist and function within the civil community, they are amenable to rules governing property rights, torts, and criminal conduct." *New Bethel Baptist Church v. Taylor*, No. 14-22-00028-CV, 2023 Tex. App. LEXIS 6697, at *8 (Tex. App.—Houston [14th Dist.] Aug. 29, 2023, no pet. h.) (internal quotations omitted.) (citing *Williams v. Gleason*, 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); see also *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 12 (Tex. 2008)). Quoting the U.S. Supreme Court in *Masterson v. Diocese of Northwest Texas*, the Texas Supreme Court held:

> 'Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints.'

*Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 602 (Tex. 2013) (quoting *Watson v. Jones*, 80 U.S. 679, 714 (1871)). In applying these principles, the Texas Supreme Court has recognized churches as unincorporated associations with capacity under Texas Law. *See e.g. Episcopal Diocese of Ft. Worth v. Episcopal Church*, 602 S.W.3d 417, 430 (Tex. 2020) (describing a religious organization made up of member congregations as an unincorporated association).

31.    <u>The Notice of Removal claims that Synod is an improper party because it has no capacity to sue and be sued</u>. Although the Notice of Removal does not make such an explicit assertion, this conclusion can be drawn from the assertion that LCMS holds Synod's right to sue and be sued. **Notice of Removal, ¶ 4.** The Notice of Removal asserts that Synod does not exist separate and

apart from LCMS. **Notice of Removal** ¶ 4. Essentially, Synod and LCMS assert that they and their governing documents, and not state law, are the ultimate authority as to Synod's capacity.

32.     <u>Synod's governing documents explicitly differentiate between LCMS and Synod</u>. By definition, Synod is an association of member congregations and ministers, while LCMS is a Missouri non-profit corporation. **Ex. 2** p.2-3 § 1.2.1(f)&(v). After creating LCMS, Synod reserved in its governing documents all autonomy entitled to churches, including the right to hold and disperse property. **Ex. 2** p.2, § 1.21(f); **Ex. 3** p.2, Art. IV.

33.     <u>Synod is an unincorporated association that has the capacity to sue and be sued in its own name</u>. Synod is unincorporated and is an "association of self-governing Lutheran congregations." **Ex. 2** p.3, § 1.2.1(v). It has both congregational members and individual members that are ministers of religion. **Ex. 3**, p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Its members have joined together for a nonprofit purpose, mainly to support one another to "carry out their commonly adopted objectives." **Ex. 2** p1, § 1.1.1; *see also* **Ex. 3** p.1-2, Art. III; *see also* **Ex. 5** p.19-21, §§2.2-2.5. Under Texas law, Synod is a "nonprofit association" and has the capacity to sue and be sued in its own name, regardless of its identity as a church. Tex. Bus. Org. Code §§ 252.001, 252.00; *see e.g. Episcopal Diocese of Ft. Worth*, 602 S.W.3d at 430.

34.     <u>Contrary to LCMS's assertions that it alone holds Synod's right to sue and be sued, Synod has presented itself before a court</u>. Synod, the "Lutheran denomination", not LCMS the non-profit, successfully presented itself to the 10th Circuit Court of Appeals in seeking to file an amicus brief in June of 2022. **Ex. 7, ¶¶** 1, 6. The motion to file the amicus brief defined "Amicus Lutheran Church—Missouri Synod" as "an international Lutheran ***denomination*** headquartered in St. Louis Missouri," with more "than 6,000 member congregations, 22,000 ordained and commissioned ministers, and nearly 2 million baptized members." **Ex. 7**, ¶ 6 (emphasis added). The definition

lacks any reference to LCMS as the entity to carry out Synod's participation in judicial proceedings. *See* **Ex. 7**, ¶ 6.

35.    Synod and LCMS do not dictate when and where Synod will have capacity. That is a question for state law. Fed. R. Civ. P. 17(b)(3).

### ii.    Synod is a Citizen of Texas

36.    An unincorporated church is a citizen of every state in which it has members. It is well settled that "an unincorporated association is deemed a citizen of every state in which its members reside." *Hummel v. Townsend, 883* F.2d 367, 369 (5th Cir. 1989) (citing *United Steelworkers of America v. R.H. Bouligny, Inc*., 382 U.S. 145 (1965). This same principle applies to unincorporated churches. *See Id*. (finding that "[s]ince at least some [Reorganized Church of Jesus Christ of Latter Day Saints] World Church members are citizens of Texas, the RLDS World Church is deemed a citizen of Texas.") If its structure is complex, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003).

37.    Synod is a citizen of Texas. Synod's members are congregations and individual ministers of the Evangelical Lutheran Church. **Ex. 3** p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Synod is divided into districts that are made up of member congregations. **Ex. 3** p.7-9, Art. XII; *see also* **Ex. 2** p.5, § 1.3.6. There is a Texas district of the Synod. LCMS's Complaint ¶¶ 29, 36, 45, 46, 65, 71, 81, *LCMS*, (No. 1:23-cv-1042-RP). Therefore, there are Synod member congregations and ministers in Texas and Synod has citizenship in Texas through those members. *Hummel, 883* F.2d p.369; *see also Hart*, 336 F.3d at 543. Synod is therefore a citizen of the state in which this suit was filed, and removal is improper if CTX has a plausible cause of action against Synod. 28 USC § 1441.

### iii.    Synod is a Party in Interest Under the Texas Uniform Declaratory Judgment Act.

38.    <u>In Texas, plaintiffs may seek declaratory relief as to rights under written instruments even when no other relief is sought</u>. The Texas Uniform Declaratory Judgment Act allows a party interested in a deed, contract, or other written instrument constituting a contract to "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). Texas courts have the authority to render such a declaration regardless of "whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003(a). "All persons who have or claim any interest that would be affected by the declaration *must* be made parties" to an action under the Act. Tex. Civ. Prac. & Rem. Code § 37.006(a) (emphasis added).

39.    <u>On the face of CTX's Petition, CTX can obtain relief against Synod.</u> CTX's Petition seeks declarations that would affect Synod's alleged interests under CTX's governing documents and real property deed, to wit: (a) Synod does not have the authority to elect regents to CTX's Board of Regents: (b) Neither CTX, nor any of its officers or regents, violated a fiduciary duty to Synod: (c) Synod is not entitled to any property interest in CTX's property; and (d) Synod is not entitled to any damages or compensation from CTX or its officers. **Petition** ¶ 23. On the face of CTX's pleadings, CTX has stated claim for which declaratory relief may be granted. *See* Tex. Civ. Prac. & Rem. Code §§ 37.003(a), 37.004(a). As such, Synod's joinder was proper and this case should be remanded to the State Court. *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 202; *Hicks*, 12 F.4th at 516.

40.    <u>Synod's interests are distinct from LCMS's and are confirmed by LCMS's Complaint.</u> LCMS's Complaint and the documents attached thereto make clear that if there was: a) a loss of rights of governance over CTX;  b) a reversionary interest in CTX's property; or c) a breach of fiduciary duties, those rights were Synods. LCMS's Complaint ¶¶ 8, 29, 30, 36, 38, 41, 43, 46,

55(a)-(c), 70-71, 76-77, *LCMS*, (No. 1:23-cv-1042-RP) (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (alleged right to property); LCMS's Complaint ¶¶ 29, 36, 45, 46, 65, 71, 81, *LCMS*, (No. 1:23-cv-1042-RP) (alleged fiduciary duties). It is Synod, not LCMS, that has an alleged interest and claims regarding the governance of CTX, CTX's property, and purported fiduciary duties of CTX and its agents and regents, so Synod must be a party to CTX's suit. Tex. Civ. Prac. & Rem. Code § 37.006(a).

41.    The cause should be remanded to the State Court as Synod is a properly joined party in interest. CTX's suit for declaratory judgment states a claim for which relief may be granted against Synod. Synod is a citizen of Texas, where the suit was filed, and has capacity under Texas law to sue and be sued. The Court should therefore remand this cause for lack of jurisdiction. 28 USC § 1441 (b)(2).

        **c.  Synod is an Indispensable Party**

42.    The Federal Rules require the joinder of indispensable parties in addition to the standard set by the removal statute. A party whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

43.    <u>Courts should determine the relative interest the party has in the litigation based on state law and decide based on the context of the litigation whether the party is indispensable.</u>  Generally, "where two or more parties are joint obligees, they are indispensable parties in an action for the enforcement of that obligation." *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977). One of the reasons for this "is the necessity or propriety for conformity with remedies for enforcing those interests to the nature of the interests themselves." *Bry-Man's, Inc. v. Stute*, 312 F.2d 585, 587 (5th Cir. 1963) (internal citations omitted). The question of indispensability is context specific and courts may "look to state law to determine the interest that the party has in the litigation." *Caytrans Project Servs. Ams., Ltd. v. BBC Chartering & Logistics GmbH & Co. KG*, 861 F. App'x 556, 559 (5th Cir. 2021).

44.    <u>The context of this litigation requires the joinder of Synod.</u> Under Texas law, Synod has a clear and substantial interest in this litigation. It is Synod's alleged loss of governance rights, Synod's alleged loss of property interests, and breaches of alleged fiduciary duties owed to Synod that are at issue. LCMS's Complaint ¶¶ 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77, *LCMS*, (No. 1:23-cv-1042-RP) (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (alleged right to property); LCMS's Complaint ¶¶ 29, 36, 45, 46, 65, 71, 81, *LCMS*, (No. 1:23-cv-1042-RP) (alleged fiduciary duties).

45.    <u>At a minimum, Synod and LCMS are akin to joint obligees, requiring Synod's joinder.</u> LCMS has asserted: (a) that CTX's governing documents are a contract between LCMS and CTX that created explicit rights for Synod, *see* LCMS's Complaint ¶¶ 55-56, *LCMS*, (No. 1:23-cv-

1042-RP); (b) that CTX made promises to both LCMS and Synod which both relied on to their detriment, LCMS's Complaint ¶ 62, *LCMS*, (No. 1:23-cv-1042-RP); and (c) that CTX owed fiduciary duties to both LCMS and Synod. LCMS's Complaint ¶¶ 64-72, *LCMS*, (No. 1:23-cv-1042-RP).  If taken as true, the very terms of LCMS's Complaint establish that Synod is a joint obligee to the alleged "contract" of CTX's governing documents, to CTX's alleged "promises", and to the Defendants' alleged fiduciary duties. Synod is therefore an indispensable party. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29; *Bry-Man's, Inc.*, 312 F.2d at 587.

## VI.   CONCLUSION

For the forgoing reasons, CTX respectfully requests that the Court remand this case for lack of subject matter jurisdiction, and grant Plaintiff all such further relief to which it is justly entitled at law and in equity.

Respectfully submitted,


*/s/ Daniel R. Richards*
**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513

**ATTORNEYS FOR PLAINTIFF CONCORDIA UNIVERSITY TEXAS**

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the April 3, 2024, I electronically filed the above and foregoing document, which will send notification of such filing to:

Steven C. Levatino
Levatino & Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
steven@lpfirm.com

Andrew F. MacRae
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
andrew@macraelaw.com

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com

*/s/ Daniel R. Richards*
**DANIEL R. RICHARDS**