IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CONCORDIA UNIVERSITY TEXAS,** § § § **Plaintiff,** § § **v.** § § **THE LUTHERAN CHURCH - MISSOURI** § **SYNOD, an unincorporated association of** § **Lutheran congregations, and THE LUTHERAN** § **CHURCH - MISSOURI SYNOD, a Missouri** § **Corporation,** § § § **Defendants.** § | Case No. 1:24-cv-176-RP |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTIONS TO DISMISS AND REMAND**

1.  <u>Introduction.</u> LCMS[1] has filed its response (the "Response") to the motions to dismiss and remand (the "Motions") arguing that because Synod declares itself not to be a "civil law entity" and it cannot be a party to this, or any, lawsuit. The arguments of the Response fail because:

    a.  The Response fails to address, or apply, the Federal and Texas laws governing citizenship, capacity, necessary parties, and real parties in interest.

    b.  The Sias declaration is not admissible in a facial jurisdictional attack and cannot vary the unambiguous provisions of the Synod governing documents.[2]

    c.  Synod is the real party in interest with contacts in Texas because LCMS is indisputably bringing claims on behalf of Synod seeking relief for alleged rights of Synod over: i) real property in Texas; ii) corporate governance over CTX in Texas; and iii) purported fiduciary duties owed by Texas citizens.

---

[1] "LCMS" refers to The Lutheran Church-Missouri Synod, a Missouri nonprofit corporation. "Synod" refers to the Lutheran Church-Missouri Synod unincorporated association. "CTX" refers to Concordia University Texas.
[2] Even if the Sias declaration is admissible, the arguments of the Response fail on their legal merits.

1

  d.  The Response relies upon inapplicable authorities.

  e.  Exercising jurisdiction over Synod does not infringe on freedom of religion.

2. <u>Federal actions must be prosecuted in the name of the real party in interest to the litigation, and for parties which are not corporations or individuals, capacity is determined by the State where the court sits</u>. Fed. R. Civ. P. 17(a) & (b)(3). Even if one party is authorized to bring suit on behalf of another without joining them to the litigation, citizenship for diversity purposes is based on the real party to the controversy, not the nominal party. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980). Moreover, parties are indispensable where complete relief cannot be afforded without their joinder or would leave an existing party subject to a substantial risk of incurring inconsistent obligations. Fed. R. Civ. P. 19(a)(1). Joinder of a party is proper where relief against that party may be granted. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202 (5th Cir. 2016). LCMS's First Amended Complaint (hereafter "Complaint") unmistakably asserts claims on behalf of Synod by seeking judgment that Synod is entitled to: a) a reversionary interest in the CTX campus; b) control over appointments to the CTX board and presidency; c) damages for alleged breach of fiduciary duty by Christian and Bannwolf; and d) declaratory relief against CTX, Christian and Bannwolf.[3] Nowhere in the Response is there any claim or argument that the rights to be adjudicated do not belong to Synod, nor could there be because it is expressly stated in the Complaint. Accordingly, under Federal law, Synod is a necessary and indispensable party and Synod's citizenship controls for diversity purposes.

3. <u>LCMS does not dispute that Synod has both congregational and individual members in Texas</u>. *See* **Resp.** Instead, LCMS asserts that Synod cannot be a party or an indispensable party, and Synod's citizenship cannot otherwise control because Synod does not exist under civil law.

---

[3] Similarly, in its state court petition CTX seeks a declaration that Synod does not have any such rights or interests.

2

*See* **Resp**. However, LCMS offers no legal support for this conclusion. Furthermore, it is clear under applicable Texas law that Synod has capacity to sue and be sued as a party in these cases.

4.  <u>In Texas, questions of entity formation and governance documents are secular questions to which courts apply neutral principles of law and do not defer to the opinion of the religious body.</u> In *Masterson v. Diocese of Northwest Texas*, the Texas Supreme Court concluded that Texas courts should not defer to the opinion of the highest religious authority on secular questions regarding religious entities; they must instead rely on neutral principles of law "in the same manner as they apply those principles to other entities and issues." 422 S.W.3d 594, 606 (Tex. 2013). Secular questions include "land titles, trusts, and corporate formation, governance, and dissolution, even when religious entities are involved." *Id*. The Texas Supreme Court further concluded that juridical entities, (e.g. the corporation in *Masterson*) have "a secular existence derived from applicable Texas law," and the entity's governing documents. *Id*. at 608. In Texas, then, whether Synod is an unincorporated association with capacity to sue and be sued is a secular question to be resolved by neutral principles of law, not by deference to the opinion of Synod or LCMS. *Id.* at 606-08.

5.  <u>Neutral principles of Texas law require that the unambiguous terms of Synod's bylaws be given their plain meaning.</u> In Texas, an entity's governing documents, like bylaws, must be construed under the same rules that govern contract interpretation. *In re Aguilar*, 344 S.W.3d 41, 49 (Tex. App.—El Paso 2011, orig. proceeding); *Episcopal Church v. Salazar*, 547 S.W.3d 353, 416 (Tex. App.—Fort Worth 2018).[4] Contractual terms must be "given their plain, ordinary, and generally accepted meaning." *In re Marriage of I.C.*, 551 S.W.3d 119, 122 (Tex. 2018). If terms "can be given definite or certain legal meaning, [they] are unambiguous" and must be construed as a matter of law. *Frost Nat'l Bank v. L&F Distribs.*, 165 S.W.3d 310, 312 (Tex. 2005).

---

[4] *aff'd in part, rev'd in part sub nom Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417 (Tex. 2020)

3

Additionally, extrinsic evidence may not be considered that "contradicts, varies, or adds to the terms of an unambiguous written agreement." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019).

6. <u>Under Texas law, Synod has the capacity to sue and be sued.</u> The terms of Synod's Constitution and Bylaws establish that (1) Synod is an association of self-governing Lutheran congregations, **Ex. 2** p.3, § 1.2.1(v), (2) Synod members consented to "join with one another in the Synod to support one another and to work together in carrying out their commonly adopted objectives," **Ex. 2** p.1, § 1.1.1, (3) Synod members include both congregations and individual ministers. **Ex. 2**, p.3, § 1.2.1(m); *see also* **Ex. 3**, Art. III & V; **Compl**. ¶ 10. Synod, by the unambiguous terms of the pleadings and its own bylaws attached to the pleadings, is an unincorporated association. Tex. Bus. Org. Code § 252.001. Under neutral principles of Texas law, Synod has capacity to sue and be sued. Bus. Org. Code § 252.007; *see also* **Motion to Dismiss** at 12-14, ¶¶ 28-33. Because capacity is determined by Texas law pursuant to Fed. R. Civ. Proc. 17(b)(3), Synod is an indispensable party with capacity to sue and be sued.

7. <u>The Court should disregard the declaration of Dr. John Sias.</u> LCMS included with the Response a declaration by Dr. John Sias. **Resp. Ex. 1**. The declaration includes statements about the history of Synod and the incorporation of LCMS, the interaction between Synod and LCMS, and his opinion on how Synod's governing documents should be interpreted, which contradict the plain language of Synod's governing documents. *See Id*.

8. <u>The Court should not consider Dr. Sias's declaration because CTX's motion to dismiss for lack of jurisdiction is a facial attack on the pleadings.</u> *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020) ("A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction."); *see*

*also Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Furthermore, the Court should disregard the Sias declaration as an impermissible attempt to use extrinsic evidence to contradict, vary, or add to the terms of Synod's unambiguous governing documents, *Barrow-Shaver*, 590 S.W.3d at 483, and because it inappropriately seeks deference to a religious entity on a secular matter. *Masterson*, 422 S.W.3d at 606-08. However, even if the Court does consider Dr. Sias's declaration, as demonstrated below, it provides no basis to deny the Motions.

9. <u>A finding that Synod has capacity under Texas law does not impair Synod's First Amendment rights because freedom of religion does not mean immunity from secular laws</u>. The Supreme Court has said that although the "independence of religious institutions in matters of 'faith and doctrine' is closely linked to independence [to] 'matters of church government'", "this does not mean that religious institutions enjoy general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (internal citation omitted). It only protects autonomy "with respect to internal management decisions that are *essential to the institution's central mission*." *Id*. (emphasis added).

10. <u>LCMS presented no evidence for its sweeping proclamation that failure to defer to Synod on the question of its capacity, "would violate the Synod's First Amendment rights to conduct religious exercise of faith as it sees fit…"</u> **Resp.** at 25. Neither the pleadings, the documents attached to pleadings, nor LCMS's Response demonstrate how a finding that Synod has capacity interferes with Synod's practice of religion. *See* **1st Am. Compl.**; *see* **Resp**. By comparison, in *Serbian E. Orthodox Diocese v. Milivojevich*, the only case relied on by LCMS for its First Amendment argument, the decisions of lower courts interfered with the church's removal of a bishop and reorganization of the diocese he formerly led – which is clearly an ecclesiastical

decision. 426 U.S. 696, 697 (1976). The question of Synod's capacity is not remotely similar and instead is a question of secular law. *See Masterson*, 422 S.W.3d 606-608.

11.     In fact, similar arguments have been rejected by the Supreme Court. In *General Counsel on Fin. & Admin. v. Cal. Superior Court*, the Court denied a stay requested by a religious institution arguing that a California court violated the First and Fourteenth Amendments by finding *in personam* jurisdiction over the entity. 439 U.S. 1369, 1369-74 (1978). Justice Rhenquist wrote that although there are some limitations on when civil courts may decide matters of "ecclesiastical cognizance and polity," the Supreme Court "never has suggested that those constraints similarly apply outside the context of [] intraorganizational disputes." *Id*. at 1372. He continued that it would be untenable that these amendments would somehow forbid the application of traditional jurisdictional analysis simply because a party was affiliated with an organized religion. *Id*. at 1373.

12.     The theory that Synod can dictate its capacity is similarly untenable. If LCMS is correct, any unincorporated church need only insert language in its governing documents that it "is not a civil law entity" to be out of reach of all civil courts. This runs afoul of the long-standing recognition that "'religious organizations come before [courts] in the same attitude as other voluntary associations for benevolent or charitable purposes…'". *Masterson*, 422 S.W.3d at 602 (quoting *Watson v. Jones*, 80 U.S. 679, 714 (1871)).

13.     The non-Texas case law cited by LCMS to support its assertion that Synod can dictate its secular capacity is inapplicable to courts sitting in Texas. Fed. R. Civ. P. 17(b)(3). LCMS asserts that there is legal support for the conclusion that when an unincorporated church incorporates a "secular body," the unincorporated church cannot have capacity to sue and be sued if it engages in only ecclesiastical matters. **Resp.** at 9-11 (citing *Turner v. Church of Jesus Christ of Latter-Day Saints*, No. 3:95-CV-1354-P, 1996 U.S. Dist. LEXIS 23175, (N.D. Tex. 1996); *Trinity Presbyterian*

*Church v. Tankersley*, 374 So. 2d 861 (Ala. 1979); and *Herbert v. Thornton*, No. 12-0607, 2014 U.S. Dist. LEXIS 28965 (E.D. La. 2014). LCMS's reliance on these cases is misplaced as neither *Tankersley* nor *Herbert* are Texas law, and *Turner* does not support LCMS's position.

14.      <u>LCMS misrepresented the holding in *Turner*.</u> The Response claims that the court in *Turner* was persuaded that where both an incorporated and unincorporated church exist, the unincorporated church lacks capacity so long as it does not engage in secular activities, but that the court ultimately found that the unincorporated church in that case "did indeed engage in secular activities." **Resp.** at 10. That is inaccurate. The court found that "because there is no clear, controlling substantive law regarding the citizenship or capacity of the noncorporate form of a church" and that such uncertainties must be resolved in favor of the party challenging diversity jurisdiction, the case must be remanded back to Texas State courts. *Turner*, 1996 U.S. Dist. LEXIS 23175 at *14. Like LCMS, the church in *Turner* could not identify any controlling Texas law that would allow the trial court to disregard the capacity of the unincorporated church. *Compare Id*. fn. 3 *with* **Resp.** at 9 ("Although LCMS, Inc. found no case law on point…"). Additionally, *Turner* was decided before the Texas Supreme Court's ruling in *Masterson*, which requires the application of neutral principles of law to secular questions, such as entity formation and capacity. *Masterson*, 422 S.W.3d at 606-608. This Court should follow *Turner* and dismiss LCMS's complaint and remand CTX's petition.

15.      <u>LCMS encourages the court to adopt the reasoning rejected in *Turner*, by relying on cases from Alabama and Louisiana.</u> *Tankersley* is an Alabama case, where the court relies on Alabama law on the capacity of churches. *Tankersley*, 374 So. 2d at 866 ("The courts in this state…"). *Herbert* is a Louisiana case.[5] *See Herbert*, 2014 U.S. Dist. LEXIS 28965 at *2. Relying on either

---

[5] LCMS also misrepresents the holding in *Herbert*. The court's ruling was not based on the capacity of an unincorporated church. *See* 2014 U.S. Dist. LEXIS 28965 at *20. Although that theory was advanced, the court relied

7

of these cases to conclude that Synod does not have capacity would be inappropriate because the law of Texas, not Louisiana or Alabama, controls as to Synod's capacity. Fed. R. Civ. P. 17(b)(3).

16. <u>LCMS also asks the court to rely on non-Texas law to determine that Synod "is not a separate legal entity" from LCMS and therefore is not a proper party to the suit</u>. **Resp.** at 11-12. LCMS relies on *F.E.L. Publ'ns, Ltd. v. Catholic Bishop of Chicago*, a case regarding the effects on parishes subsumed under the Catholic Bishop through the "corporate sole" laws of Illinois. 754 F.2d 216, 221 (7th Cir. 1985). There is no similar "corporate sole" framework in Texas law. *See* **Resp.** at 11-12.[6] Relying on Illinois law to find Synod lacks capacity would violate the Federal Rules of Civil Procedure. Fed. R. Civ. P. 17(b)(3).

17. <u>Other than asserting, without legal basis, that Synod is not a civil law entity, LCMS offered no law that allows LCMS to file suit on Synod's behalf without joining Synod.</u> *See* **Resp.**; *contra* Fed. R. Civ. P. 17(a). LCMS does not deny that Synod claims rights to corporate governance over CTX and fiduciary duties from CTX's Board of Regents. *Compare* **Resp.** *with* **Motion to Dismiss** at 8-9, ¶ 17. On these bases alone, Synod is a real party interest who must be joined. *See United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969); *see also* **Motion to Dismiss** at 14-18.

18. <u>LCMS argues, incorrectly, that the Motion to Dismiss mischaracterized Synod's ability to hold property</u>. *See* **Resp.** at 4-5. First, Synod's governing documents explicitly state that "Synod in convention is empowered to…purchase, hold, administer, and sell property of every description

---

on Fifth Circuit case law which states that requests to join parties "against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction … should never be granted." *Id*. at 19-20. Those arguments are inapplicable to this case because Synod's citizenship controls in the LCMS initiated proceedings and CTX seeks declaratory relief against Synod in the removed state court suit. **Motion to Dismiss** at 10-21; **Notice of Removal**, App. at 6-7.

[6] LMCS also points the court to *Diocese of Fort Wayne-South Bend, Inc. v. Sebelius*, but this is federal question case involving the Religious Freedom Restoration Act in Indiana where neither capacity nor diversity were questions before the court. *see* 988 F. Supp. 2d 958, 960 (N.D. Ind. 2013).

in the interest of the Synod." **Ex. 3**, pg. 2 Art. IV. These words must be given their plain meaning. *In re Marriage of I.C.*, 551 S.W.3d at 122. Second, the test for real party in interest is not "who can hold property?" The test is "who holds the substantive rights?" *936.71 Acres of Land*, 418 F.2d at 556. In this case, that is clearly Synod. Synod's governing documents unambiguously assert that ownership of property within the Concordia University System "is vested" in Synod and controlled by Synod's Board of Directors, not LCMS. **Ex. 2** at 147, § 3.10.6.4.[7] Thus, Synod must be joined to this litigation as a party, Fed. R. Civ. P. 17(a). Moreover, even if Synod is not a proper party, its citizenship still controls for diversity purposes because Synod is clearly the stake holder. *Hummel v. Townsend,* 883 F.2d 367, 372 (5th Cir. 1989). In either instance, the Court does not have jurisdiction over LCMS's Complaint, or CTX's petition.

19.  <u>For these same reasons, Synod was not fraudulently joined as a party to CTX's suit for declaratory judgment.</u> LCMS does not dispute that if Synod has capacity under Texas law, then CTX can obtain relief against Synod under the Texas Uniform Declaratory Judgment Act. *Compare* **Resp.** at 19-21 *with* **Motion to Remand** at 15-16. Instead, LCMS relies on its contention that because Synod declares itself not to be a civil law entity CTX fraudulently joined Synod to its suit in Texas State court. **Resp.** at 19-21. However, based on the LCMS Complaint, Synod asserts rights of control over CTX's property, its board of regents, its president, and its teaching staff, and that CTX's governing board owes Synod fiduciary duties. **1st Am. Compl.** ¶¶ 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77, (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged

---

[7] CTX, Bannwolf, and Christian do not concede that Synod has any ownership rights to CTX's property. However, this motion is limited to an attack on the jurisdictional facts contained in the Complaint and attached documents. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint….The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") Defendants reserve the right to attack the merits of each claim in other appropriate motions or proceedings as necessary.

rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (alleged right to property); **1st Am. Compl.** ¶¶ 29, 36, 45, 46, 65, 71, 81, (alleged fiduciary duties). CTX seeks a declaration that Synod has none of these rights and has stated a claim for which relief can be granted against Synod. *See* Tex. Civ. Prac. & Rem. Code §§ 37.003(a), 37.004(a). Moreover, even if Synod was improperly joined, its citizenship still controls for diversity purposes. *Hummel, 883* F.2d at 372.

20. <u>*Hummel v. Townsend* is controlling precedent that requires Synod's citizenship to control for diversity purposes even if LCMS can bring suit without joining Synod</u>. LCMS attempts to distinguish itself from *Hummel* by first saying that in *Hummel*, the court found there was no trust established and that the Bishop was only a "trustee" by virtue of his status as a church official. *See* **Resp.** at 19. But, like *Hummel*, LCMS has not demonstrated, or even alleged, that it is a trustee of a separate trust of Synod's property. *See* **1st Am. Compl.**; *see also* **Resp.** Moreover, LCMS mischaracterizes the Bishop's role as one of unilateral appointment. *See* **Resp.** at 18. Instead, like the alleged purpose of LCMS, the Bishopric was appointed as "responsible for all the business or temporal affairs of the church wherever the church is located in the world" by the church's world conference. *Compare Hummel*, 883 F.2d at 370 *with* **1st Am. Compl.** ¶¶ 15-18, **Resp.** at 8, **Resp. Ex. 1** at ¶ 8. Under *Hummel*, the citizenship of Synod controls for diversity purposes because LCMS is only a representative of Synod by virtue of it being within and dependent part of Synod. *Hummel* 883 F.2d at 372.

21. <u>If Synod is not joined as a party, it's citizenship controls for diversity purposes because LCMS is pursuing remedies on behalf of Synod.</u> *See* **1st Am. Compl.** ¶¶ 50, 78. LCMS claims *Corfield v. Dall. Glen Hills LP* supports the conclusion that only LCMS's citizenship controls.

10

**Resp.** at 13-14 (citing 355 F.3d 853, n. 10 (5th Cir. 2003)). *Corfield* is inapplicable as the underwriter in that case removed all allegations that it was suing in a representative capacity and the only issue was whose citizenship controls when "a lead underwriter sues only on its own behalf." *Corfield*, 355 F.3d at 856-857. By contrast, LCMS repeatedly asserts it is suing on behalf of itself and Synod. **1st Am. Compl.** ¶¶ 50, 78. Therefore, Synod's citizenship must be considered for diversity purposes. *Bynane v. Bank of N.Y. Mellon,* 866 F.3d 351, 359 (5th Cir. 2017) (Courts must consider "the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another.") LCMS is still suing in a representative capacity, therefore Synod's citizenship must control for diversity purposes. *Hummel*, 883 F.2d at 372.

22. <u>The trustee cases cited by LCMS do not support the conclusion that LCMS's citizenship controls for diversity purposes.</u> LCMS seemingly argues that because it allegedly has control over Synod's property, it and not Synod is the real party to the controversy. *See* **Resp.** at 12-14. LCMS relies on a series of cases in which a trustee sues in their own name.[8] *Id*. (citing *Navarro Sav. Ass'n*, 446 U.S. (1980); *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330 (5th Cir. 2016); *Bynane*, 866 F.3d 351; *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 302 (5th Cir. 2017)). The two-part test for when a trustee is considered the real party to the controversy for diversity purposes is: (1) is the party an "active trustee", (2) "whose control over the assets held in its name is real and substantial"? *Bynane*, 866 F.3d at 357. LCMS has not

---

[8] LCMS skips over the necessary first part of the inquiry, which is whether it even has the right under Federal law to sue on Synod's behalf without joining Synod. *See Navarro Sav. Ass'n*, 446 U.S. at fn. 9 ("There is a "rough symmetry" between the "real party in interest" standard of Rule 17 (a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes....") The Federal Rules of Civil Procedure explicitly permit trustees of an express trust to sue in their own name without joining the person for whose benefit the action is brought. Fed. R. Civ. P. 17(a)(1)(E). LCMS has not even alleged, let alone demonstrated, that it is the trustee of an express trust for the benefit of Synod. *See* **1st Am. Compl.**; *see also* **Resp.** Yet, it is pursuing remedies on behalf of Synod without joining Synod. **1st Am. Compl.** ¶¶ 50, 78**.** It has provided no legal basis for doing so. *See* **Resp**.

11

even alleged, let alone demonstrated, that it is the trustee of an express trust for the benefit of Synod, *see* **1st Am. Compl.**; *see also* **Resp.**, and therefore fails the first prong of whether its citizenship can control for diversity purposes.

23. <u>LCMS also cannot demonstrate it has "control over the assets" at issue in this litigation.</u> LCMS only alleges that it "has real and substantial control over the assets held in its name." **Resp.** at 14. Nowhere does LCMS allege that it holds or owns CTX's property in its name. *See* **1st Am. Compl.**; *see* **Resp**. In fact, under the terms of Synod's governing documents it is Synod, not LCMS, that has an alleged vested ownership in the institution and the institution's board of regents is designated to operates and manage it: "[The university board of regents] shall operate and manage the institution *as the agent of the Synod, in which ownership is primarily vested and which exercises its ownership through the [Synod] Board of Directors* as custodian of the Synod's property…". **Ex. 2** at 147, § 3.10.6.4. (emphasis added).[9] LCMS asks the Court to disregard the explicit language of Synod's bylaws, which vests control of Synod's property in the Board of Directors, and find instead that control is somehow vested in the corporate entity LCMS because LCMS's Board of Directors is composed of the same persons as Synod's Board of Directors.[10] *See* **Resp.** at 4-5. However, Synod's governing documents must be given their plain meaning. *In re Marriage of I.C.*, 551 S.W.3d at 122. Nowhere do Synod's governing documents say that the corporate entity LCMS is the custodian of all of Synod's property, including property held in the name of other Synod affiliated entities. *See e.g.* **Ex. 2**. Instead, Synod's governing documents

---

[9] Again, neither CTX, Bannwolf, nor Christian concede that Synod has vested ownership rights to CTX's property.
[10] Once again, LCMS relies on the interpretation of Synod's bylaws of Dr. John Sias to support its position. **Resp.** at 5. Consideration of Dr. Sias's declaration for this purpose is inappropriate as construction of governance documents and property ownership is a secular question to be determined by neutral principles of law, not subject to deference to a religious institutions' opinion. *Masterson*, 422 S.W.3d at 606. Moreover, the consideration of extrinsic evidence as to the meaning of Synod's bylaws is inappropriate as the terms of Synod's bylaws are unambiguous. *Barrow-Shaver Res. Co.*, 590 S.W.3d at 483.

12

explicitly state that Synod's Board of Directors is the custodian of Synod's property, including property owned by universities in the Concordia University System. **Ex. 2** at 147, § 3.10.6.4; *see also* **Ex. 2** at p.6, §1.4.4; p.95, § 3.3.4; p.98 § 3.3.4.7; Ex. 5 p. 12, ¶ 13.1.2. Moreover, given that Synod's Board of Directors directs LCMS's actions, LCMS does not have sufficient independence to satisfy this prong even if it were a trustee. *Compare* **Resp. Ex. 1** at 9 *with Justice*, 674 F. App'x at 332 (beneficiaries have no control over trust.) Therefore, LCMS cannot satisfy the second prong of the test to show that it holds the assets at issue in its name and exercises control over them. *See Bynane*, 866 F.3d at 357.[11] LCMS has therefore not demonstrated that it is a real and substantial party to the controversy, therefore Synod's citizenship must be considered for diversity purposes. *Navarro Sav. Ass'n.*, 446 U.S. at 460-461.

24. <u>The law regarding unincorporated divisions also does not support LCMS's position because LCMS admits that Synod is not an unincorporated division of LCMS</u>. **Resp.** at 15. The Response asks the Court to find that LCMS's citizenship controls for diversity purposes based on caselaw finding that a parent corporation's citizenship controls when an unincorporated division of the corporation is a litigant. **Resp.** at 14-15. Although admittedly inapplicable to the facts of this case, LCMS urges its relevancy because it claims, "Synod is not a civil law entity." **Resp.** at 15. Once again, LCMS has not identified any federal or state law that would permit this Court to disregard Synod's "secular existence derived from applicable Texas law." *See Masterson*, 422 S.W.3d at 608. Synod must either be made a party to this litigation, Fed. R. Civ. P. 17(a), or it's citizenship must control for diversity purposes. *Hummel* 883 F.2d at 372.

25. <u>Texas courts have personal jurisdiction over Synod</u>. Other than re-urging the unsupported conclusion that Synod is "not a civil law entity," LCMS has not challenged that Synod is a resident

---

[11] Once again, LCMS has completely failed to address Synod's alleged rights to control CTX's board of regents and its teaching staff, and purported rights of fiduciary duties from CTX's governing members.

13

of Texas. *See* **Resp.** at 21-22. As a resident of Texas, Synod is subject to the jurisdiction of Texas courts. However, even if Synod were not a Texas resident, under the long-arm statute, suits are permitted against "non-residents" who: a) claim an adverse interest to title to property in Texas; and b) those who "do business in the state," including such things as recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside the state. Tex. Civ. Prac. & Rem. Code §§ 17.003; 17.042. What constitutes "doing business" in Texas, is "as far as the federal constitution requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Moreover, due process is satisfied where a party "purposefully avails itself of the privilege of conducting activities in the forum state and the suit arises out of or relates to the defendant's contacts with the forum." *Luciano v. SprayFoamPolymers.com, LLC,* 625 S.W.3d 1, 8 (Tex. 2021) (internal citations omitted). When a party "purposefully avails itself of the privilege of doing business in Texas, it has clear notice that it is subject to suit there." *Id*. at 9-10.

26. <u>Synod claims an adverse interest in CTX's property and engages in business in Texas through its attempts at corporate control over CTX.</u> Synod operates the Concordia University System through which it claims an adverse reversionary interest in CTX's property. **1st Am. Compl. ¶¶** 25, 60; **Ex. 6.** This claimed adverse interest in CTX's property brings Synod within Texas's long-arm statute. Tex. Civ. Prac. & Rem. Code § 17.003. Synod also claims the right to select four of CTX's board members, the right to approve the CTX president, and the right to approve of CTX's faculty. *See e.g.* **1st Am. Compl**. ¶ 55(a)-(c); *see also* **1st Am. Compl**. ¶¶ 36, 41; **Ex. 2** p. 145-46, §§ 3.10.6.2(1)-(5); **1st Am. Compl**. ¶¶ 38, 71; *see also* Ex. 2 p.151-52, § 3.10.6.6.2(b)(6); (approval of CTX's president); **1st Am. Compl. ¶¶** 38; *see also* **Ex. 2** p.153, § 3.10.6.7.3 (faculty approval). Synod also asserts that CTX fulfills Synod's objectives as an agency

of Synod. **1st Am. Compl.** ¶ 26. Synod is thus clearly doing business in the State of Texas and purposefully availed itself of the privilege of doing business in Texas. Tex. Civ. Prac. & Rem. Code § 17.042; *Luciano*, 625 S.W.3d at 9-10. It is this business that gives rise to the current litigation. Texas courts therefore have *in personam* jurisdiction over Synod. *Id*. at 8.

27. <u>In addition, LCMS's suit against CTX and members of its governing board subjects Synod to personal jurisdiction in Texas</u>. "Voluntarily filing a lawsuit in a jurisdiction constitutes a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the two lawsuits arise from the same general transaction." *Khai Huynh v. Hang Nguyen*, No. 01-17-00935-CV, 2018 Tex. App. LEXIS 7175, at *17 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.). There is no dispute that the suit filed by CTX in Texas State courts and the suit filed by LCMS in the Western District of Texas arise from the same transaction. *See* **Resp.** at 2. LCMS's action of filing suit was taken at the direction of Synod's Board of Directors. **Resp.** at 5**; Resp. Ex. 1** at ¶ 9 (Synod's Board of Directions "is legal representative of the Synod precisely by directing the legal actions of LCMS, Inc…."). Direction of Synod's Board of Directors to file suit in Texas to seek remedies on Synod's behalf is sufficient for Texas courts to establish *in personam* jurisdiction. *See e.g. Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71-74 (Tex. 2016) (jurisdiction exists over an entity who, for their own benefit, directs another corporation to specifically seek out Texas facilities.)

28. <u>Even if Texas courts do not have personal jurisdiction over Synod, Synod's citizenship still controls for diversity purposes.</u> The alleged rights and duties, if any, at issue in this litigation belonged to Synod. **1st Am. Compl**. 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77 (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged

right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (right to property); 1st Am. Compl. ¶¶ 29, 36, 45, 46, 65, 71, 81 (fiduciary duty). Therefore, even if Texas courts do not have jurisdiction over Synod, Synod's citizenship still controls for diversity purposes. *Navarro Sav. Ass'n*, 446 U.S. at 460-61.

## CONCLUSION

For the foregoing reasons, CTX, Bannwolf, and Christian request that the Court dismiss LCMS's Complaint and CTX requests that the Court remand its petition to the State District Court of Travis County for lack of subject matter jurisdiction, and further requests that the Court grant these parties all such further relief to which they are justly entitled at law and in equity.

Respectfully submitted,

*/s/ Daniel R. Richards*
**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513

**ATTORNEYS FOR PLAINTIFF CONCORDIA UNIVERSITY TEXAS, INC.,**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 23rd day of May 2024, I electronically filed the above and foregoing document, which will send notification of such filing to:

| | |
|---|---|
| Steven C. Levatino<br>Levatino & Pace PLLC<br>1101 S. Capital of Texas Hwy.<br>Bldg. K, Suite 125<br>Austin, Texas 78746<br>steven@lpfirm.com | Andrew F. MacRae<br>MacRae Law Firm PLLC<br>3267 Bee Cave Road<br>Suite 107, PMB 276<br>Austin, Texas 78746<br>andrew@macraelaw.com |

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com


                                       */s/ Daniel R. Richards*
                                       **DANIEL R. RICHARDS**