**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| THE LUTHERAN CHURCH—MISSOURI SYNOD, a Missouri nonprofit corporation, Plaintiff, | § § § § | |
| v. | § § § | Case No. 1:23-cv-1042-DAE Consolidated with 1:24-cv-176-DAE |
| DONALD CHRISTIAN, CHRISTOPHER BANNWOLF, CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1–12 Defendants. | § § § § § | |

## RESPONSE TO MOTION FOR A PROTECTIVE ORDER

The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation ("LCMS"), submits the following Response to Defendant Concordia University Texas, Inc's ("CTX") Motion for a Protective Order ("Motion," Doc. 23).

### Introduction

CTX seeks a protective order relating to third-party subpoenas that LCMS served on three former members of the CTX Board of Regents, claiming that any documents responsive to the subpoenas are protected from disclosure by the attorney-client and/or attorney work product privileges, or under the First Amendment to the United States Constitution. The Motion is premature and prophylactic, at best, as it is evident neither CTX nor its former regents it seeks to relieve from complying with legitimate discovery requests have bothered to determine whether (1) any of the regents have any documents responsive to the discovery requests at issue; and (2) whether any of those documents are in any way privileged.

None of the requests for documents mentions or even intimates that LCMS seeks communications between the regents and their attorneys; nor does any request ask for documents

reflecting an attorney's work product. Moreover, LCMS will stipulate it does not seek documents protected by either the attorney-client or the attorney work product privilege (although it is of course CTX's burden to establish that any documents it says are protected by the attorney work product privilege were indeed created in anticipation of litigation). Moreover, the First Amendment does not protect CTX from the requested discovery. The Court can avoid wading too deeply into this discovery dispute simply by requiring the three former regents to identify any responsive documents and provide them to their lawyer to determine whether any are potentially privileged, and if so, create a privilege log. At the moment, however, the Motion really seeks an advisory opinion, and should be denied.

## Background

This case is an ecclesiastical dispute between the LCMS and CTX, which is an LCMS-created agency, over proper governance of CTX.  On November 4, 2022, the CTX Board of Regents ("CTX Board") made various amendments to its charter, bylaws, and policy manual, in violation of its charter, bylaws, and policy manual, and other governing documents in an attempt to remove CTX from the ecclesiastical governing authority of LCMS.  LCMS sued, seeking—among other relief—a declaration from the Court that the actions of the CTX Board were illegal. LCMS also sued the members of the CTX Board who voted in favor of the amendments, for breach of their fiduciary duty to LCMS.  Because the vote was conducted in secret, LCMS did not know (and still doesn't) the identity of the rogue regents, and therefore identified them in its First Amended Complaint as John Does 1-12.  Through the discovery process, LCMS has attempted to identify the John Does, and learn more about the CTX decision to remove itself from the governance of LCMS—basic, but essential discovery. These discovery attempts have been thwarted at every step.

On July 12, 2024, LCMS served interrogatories and requests for production on CTX, to which CTX responded on August 12, 2024.  A copy of CTX's Answers to Interrogatories is attached hereto and incorporated by reference as Exhibit 1; and a copy of CTX's Responses to Requests for Production is attached hereto and incorporated by reference as Exhibit 2. CTX objected to 15 of the 24 interrogatories, and 27 of the 46 requests for production, refusing to identify the regents who voted on amending the CTX charter, bylaws and policy manual, or produce documents reflecting communications between them, on the grounds that the identity of the regents and communications between them were irrelevant. *See* Exhibit 1 at Answers Nos. 1-7; Exhibit 2 at Responses Nos. 13 and 18. Importantly, CTX did not raise the First Amendment as a basis for any of its multiple objections. *See* Exhibits 1 and 2.  LCMS wrote to CTX on September 13, 2024, addressing the various objections CTX had raised in response to LCMS's written discovery requests. A copy of that letter is attached hereto and incorporated by reference as Exhibit 3. It was only after that letter that CTX raised the First Amendment as a ground for resisting discovery, in its Amended Answers to Interrogatories and Amended Responses to Requests for Production on September 20, 2024.  (Copies of those instruments are attached hereto and incorporated by reference as Exhibits 4 and 5 respectively.)[1]

Stonewalled by CTX, LCMS issued subpoenas to three former CTX regents on August 26, 2024, requiring them to testify at a deposition and produce documents. LCMS also communicated with CTX counsel, as well as separate counsel for the three former regents, regarding scheduling accommodations. *See* Exhibit 6 (emails between LCMS counsel and CTX counsel).  On September 4, 2024, all three subpoenas were amended to accommodate the schedules of the witnesses and/or the attorneys.  *Id*. Copies of the amended subpoenas are attached to CTX's Motion as Exhibits 3-

---

[1] CTX did not address any of the arguments raised in LCMS's September 13, 2024, letter. LCMS anticipates having to file a motion to compel amended and/or supplemental discovery responses.

5 (Docs. 23-3, 23-4 and 23-5). Although it had requested and received scheduling accommodations for the three regents' depositions, CTX moved for a protective order, seeking to prevent the former regents from producing any documents at all.[2] *See* Doc. 23.

**Argument**

**A.      The Discovery At Issue**

As noted above, the discovery requests at issue were not addressed to CTX. Rather, they were third-party subpoenas addressed to former members of the CTX Board of Regents, seeking discovery regarding the amendments to the charter, bylaws, and policy manual for CTX, and which regents voted for them.  *See* Motion at ¶ 1. CTX has asserted various privileges to prevent the former regents from complying with the subpoenas.[3]  These include the attorney-client and attorney work product privileges, as well as privileges pursuant to the First Amendment rights of freedom of religion and freedom of association. But LCMS does not seek documents protected by the attorney-client privilege or the attorney work product privilege; and First Amendment privileges do not apply to the discovery in question.

**B.      LCMS Does Not Seek Documents Protected By The Attorney-Client And/Or Attorney Work Product Privileges**

None of LCMS's document requests to the former regents seek information exchanged with CTX's attorneys or prepared by CTX's attorneys. *See* Motion at Exhibits 3-5. Indeed, although several document requests seek information exchanged between the particular former regent and others, nowhere in any of the third-party subpoenas is there a request for information

---

[2] The subpoenas sought production of documents and deposition testimony. *See* Motion at Exhibits 3-5. In its Motion, CTX did not address the assertion of privileges in depositions. Presumably, CTX intends to instruct a witness not to answer a question when necessary to preserve a privilege, Fed. R. Civ. P. 30(c)(2), which can then be handled through a motion to compel. *See* Fed. R. Civ. P. 37(a)(3)(B)(i).

[3] The former regents have indicated through counsel they will not respond to the subpoenas while CTX's Motion is pending.   The former regents retained counsel who also filed a Motion for Protective Order and Motion to Quash. *See* Doc. 38 in Case No. 1:23-cv-1042.

4

provided to or generated by an attorney. These two privileges are being asserted prophylactically and without foundation.

And that is a big problem with the Motion as a whole.  The attorneys who filed the Motion do not claim to represent any of the former regents; nor do they identify any responsive documents in the possession, custody or control of those regents that would even be responsive, let alone privileged. Moreover, the former regents filed their own Motion for Protective Order and Motion to Quash, in which they, likewise, do not identify any responsive documents or any potentially privileged documents. *See* Doc. 38 (since mooted). Instead, the regents in their motion defer to CTX's blanket assertions of privilege without identifying any document to which the privilege applies. *Id.*  This is putting the cart before the horse.

LCMS suggests that instead of the Court considering CTX's privilege assertions in a vacuum, CTX and/or the regents be required to locate, identify and log the documents that are (1) responsive to the subpoenas; and (2) allegedly privileged.  *See* Fed. R. Civ. P. 26(b)(5) (setting out requirements for privilege log). Once that log is completed, LCMS can then review the log and decide whether to challenge the claim that any of the allegedly privileged documents are indeed privileged.[4] *Id*.

**C.      First Amendment Privileges Do Not Apply**

The First Amendment does not protect internal communications at CTX because of the longstanding and intimate ecclesiastical relationship between CTX and LCMS. CTX makes no mention of the relationship in its Motion, and seeks to cast LCMS as an intrusive, unwelcome and unrelated party, instead of recognizing LCMS's governance as the religious entity that created

---

[4] As CTX acknowledges in its Motion, the attorney work product privilege protects discovery of documents "prepared in anticipation of litigation or for trial."  *See* Motion at 14 (citing Fed. R. Civ. P. 26(b)(3). The party asserting the privilege has the burden to prove the documents were prepared in anticipation of litigation.  *Hodges, Grant & Kaufman v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

CTX and sustained it for nearly 100 years in furtherance of the ecclesiastical denomination, The Lutheran Church—Missouri Synod (the "Synod")[5]. This is not a dispute between unrelated parties, with one party seeking improper, privileged discovery. Rather, LCMS is seeking to govern, understand (and prevent) the improper behavior of its agency, CTX, which it founded and supported in furtherance of its religious mission.   The free exercise clause of the United States Constitution does not allow CTX to use it as a shield against governance by its own religious denomination.

### 1.   The Relationship Between LCMS And CTX

The background of this dispute is set forth in detail in LCMS's First Amended Complaint (Doc. 11), which is incorporated herein by reference. Important to this particular discovery issue in dispute are the following facts.

This is a dispute concerning the governance of CTX, a religious university that is an "agency" of the Synod.[6]   The key issues central to this case have already been decided internally by the Synod's Commission on Constitutional Matters ("CCM").   The CCM was established by the Synod to interpret the Synod Constitution, Bylaws and resolutions and ensure that the governing instruments of the Synod and its agencies are in accord with the Synod Constitution and Bylaws. The CCM has concluded that CTX—a university established and supported by the Synod—violated the Synod Bylaws and Constitution when the CTX Board amended CTX's charter, bylaws and

---

[5] The Synod, as used throughout this Response to CTX's Motion for Protective Order, is the church body or religious denomination, established in 1847 and consisting of voluntary, self-governing, member congregations, individual members (ministers), and all Synod agencies (defined later). Synod, as explicitly stated in its Bylaws, is not a civil law entity (Bylaw 1.2.1 (v)). LCMS, also as used throughout, also known as "Corporate Synod" in Synod Bylaws (Bylaw 1.2.1 (f)), is the civil law entity incorporated by the Synod in 1892 to carry out its business, property, and civil law functions, including the right to sue and be sued. LCMS has the authority, pursuant to the Synod's Constitution and Bylaws and its Articles of Incorporation, to make the claims and assertions in the First Amended Complaint for the benefit of the Synod.

[6] Under the Synod Bylaws, an "agency" of the Synod is not a civil law agent in a civil law principal-agent relationship, but rather an instrumentality formed, or authorized by the Synod to be formed, to accomplish the Synod's objectives, missions and ministries in society. *See* Synod Bylaw 1.2.1 (a), p. 21 (First Amended Complaint at Exhibit B).

policy manual without the required prior approval of the CCM and without following the process set forth in the Synod bylaws.  CTX's changes to its charter, bylaws and policy manual attempt to sever CTX's relationship to Synod under the Synod Constitution and Bylaws.  CTX has refused to recognize or abide by CCM's final and binding decision.  CTX also has refused to recognize or abide by a decision by the Synod in convention (which is the highest governance authority in the church body) on August 1, 2023, that affirmed the CCM decision.

LCMS is the civil law corporation formed by the ecclesiastical denomination, the Synod. LCMS, also known in the Synod Bylaws as "Corporate Synod," exists to carry out the business, property, and legal affairs of the Synod.  LCMS, as one of the corporate entities formed by the Synod in convention, facilitates, performs, oversees, and coordinates, on behalf of the Synod and the Synod's member congregations, various ministries in the United States as well as in other countries. LCMS assists in coordinating resources of Synod member congregations and has supported the establishment and maintenance of a number of synodical colleges, universities, and seminaries in the United States, including CTX.

Each university authorized to be established by the Synod is an "agency" of the Synod (Constitution Art. III). *See* Synod Bylaw 1.2.1, p. 21 (First Amended Complaint at Exhibit B). Agencies of the Synod include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and Synod-wide corporate entity.  *Id.*  In this case, CTX, as an agency of the Synod, is in existence solely because of the efforts of the Synod, its members and LCMS, and is subject to the Constitution and Bylaws of Synod.

In 1925, LCMS purchased a property near the University of Texas for the formation of a Synod university, which later became CTX.  LCMS authorized and paid for the construction of buildings on the property and furniture, and assisted with funding and the purchasing of books for

7

the library, these being the first of many significant expenditures essential to the foundation, maintenance, and expansion of the new institution.  The school was recognized within the Synod as a mission and ministry of the Synod (*i.e.,* an agency) fulfilling the objectives of the Synod and LCMS.  The Synod and LCMS have planned, established and supported the school over the last 100 years. Historically, CTX has acknowledged and admitted that CTX is a part of the Synod and openly and regularly called on the Synod as a whole to support it. Additionally, CTX accepted and abided by the Synodical form of governance set forth in the Synod Bylaws, which assured Synod members of CTX's ecclesiastical fidelity to the Synod, until November 2022.

LCMS has supported CTX through the years by deeding property in trust to CTX; through direct funding, including yearly subsidies, interim financing, grants, facilitation of debt service, and guarantying loans for CTX, among other benefits; and in 2006, conditionally waiving its reversionary interest in the CTX main campus property to facilitate CTX selling that property and moving the campus to a new location, based on the obligation of CTX to reestablish the reversionary interest in the new campus property.   Such reversionary interest is required, in part, to be granted by CTX to LCMS pursuant to Resolution 4-04 adopted by the delegates of the Synod at its 2004 convention.  *See* Synod Resolution 4-04 (First Amended Complaint at Exhibit D). To date, CTX has failed to follow through with that obligation, instead refusing to recognize LCMS's reversionary interest in the CTX campus.

CTX has been governed and operated by the CTX Board as a fiduciary of the Synod because it was created to further the charitable purposes of the Synod.  *See* Bylaw 3.10.6.4 (i)(1), pp. 167–68 (First Amended Complaint at Exhibit B).  On November 8, 2022, the CTX Board, without prior notice to or permission from the CCM, as required under the Synod Bylaws, and without the approvals required to be obtained prior to a governance change separating an institution from Synod

governance (Bylaw 3.6.6.4 (i), p. 132), amended its charter, bylaws and policy manual, purporting to fundamentally change its relationship with the Synod.  On April 4, 2023, the CTX Board voted to reaffirm the November 8, 2022, decision to amend CTX's charter, bylaws and policy manual.  The effect of these amendments was to allow CTX "to remove itself from the authority of the LCMS."  *See* Motion at Exhibit 1 (Declaration of Donald Christian).

The CTX Board had a fiduciary duty as a whole to LCMS.  LCMS has included a claim of breach of fiduciary duty against the regents who voted for the amendments in November 2022 and again in April 2023.  *See* First Amended Complaint at ¶¶ 64-72.  The regents named as John Does 1-12 are the members of the Board who voted for the CTX Amendments, both in November 2022, and in April 2023.

### 2.   The Cases CTX Relies On Involve Unrelated Parties.

CTX does not cite a single case involving an internal ecclesiastical struggle, such as the one here. None of the cases CTX cites as protecting First Amendment rights in discovery matters is evenly remotely analogous to this case, as they all involve disputes between unrelated parties. Moreover, the cases CTX cites that do not involve discovery issues are supportive of LCMS's position that this is an internal church dispute that does not invoke First Amendment privilege protections.

In *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010),[7] two same-sex couples alleged that California's Proposition 8 violated the Due Process and Equal Protection clauses of the Fourteenth Amendment.  They served requests for production on the proponents of the law (the governor of California, the attorney general of California and other political figures) seeking, among other things, internal campaign communications. The Ninth Circuit found those discovery

---

[7] Motion at ¶ 11.

requests violated the proponents' First Amendment rights. 591 F.3d at 1140. There was no suggestion that there was any relationship between the parties other than as adverse litigants.

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595[8] did not even involve discovery. In that case, the Supreme Court addressed a California law requiring charitable organizations to disclose Schedule B to their IRS Form 990s, identifying the names and addresses of their major donors. The Court found such compelled disclosure unconstitutional, as violating the First Amendment right to free association. 594 U.S. at 619. The Court reached a similar result in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1963),[9] finding unconstitutional a district court order requiring the NAACP to disclose a list of its members. 357 U.S. at 1174.

In *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018),[10] the Fifth Circuit struck down a district court order compelling a non-party, the Texas Conference of Catholic Bishops, to disclose internal communications, in a lawsuit filed by abortion providers challenging the constitutionality of a Texas law relating to fetal remains following an abortion. In doing so, the Fifth Circuit recognized that internal non-party church communications were protected by the First Amendment of the United States Constitution from discovery by an adversary (*i.e.,* the abortion industry).  896 F.3d at 375-76.

*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648 (10th Cir. 2002),[11] did not involve a discovery dispute. Instead, the Tenth Circuit upheld a district court's dismissal of a lawsuit against a church under the church autonomy doctrine, which "prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity." 289 F.3d at 655. Interestingly, this case is supportive of LCMS's position in this case—that secular

---

[8] *Id.*
[9] *Id.*
[10] Motion at ¶ 12.
[11] *Id.*

courts are bound by the decision of the highest church judicatory in internal matters of faith or ecclesiastical rule. *Id.*; *see* First Amended Complaint at ¶ 8 (explaining that the CCM, the highest tribunal in the Synod, has already determined that CTX's actions in amending its charter, bylaws and policy manual without the Synod's approval were illegal and that decision has been approved by the Synod in convention).

*Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985),[12] is similarly supportive of LCMS's position. "Ecclesiastical decisions are generally inviolate; civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." 772 F.2d at 1167 (citing *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976)).

In short, none of the cases that CTX cites support its position that it can shield its internal deliberations and/or regents' breaches of their fiduciary duty from its governing denomination by claiming a First Amendment privilege. The First Amendment privilege exists to prevent the government or other unrelated third parties from discovering information protected by the First Amendment, such as campaign contributors (*Perry v. Schwarzenegger*), donors to charitable organizations (*Ams. for Prosperity Found. v. Bonta*), or membership (*NAACP v. Alabama*).[13] *See also In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011) ("[T]he First Amendment privilege generally guarantees the right to maintain private associations when, without that privacy, there is a chance that there may be no association and, consequently, no

---

[12] *Id.*

[13] CTX cites the *HotChalk* case to argue that LCMS agrees that religious organizations' internal communications are protected. Motion at ¶ 18. That is generally true—HotChalk, Inc., which had no religious affiliation with LCMS, sued LCMS for interference with a contract between HotChalk and another Concordia University, and sought LCMS's internal communications. LCMS resisted those discovery requests. But again, the parties to this suit are religiously affiliated, which makes *HotChalk*, *Perry*, *Bonta*, and *NAACP* easily distinguishable.

expression of the ideas that association helps to foster.").It does not exist to prevent a governing church organization from freely exercising its governing authority by finding out which of the regents it placed on one of its agency church organization's board violated his or her fiduciary duty by voting to remove the agency from governance. *See, e.g., Ruiz v. Mart, L.L.C.*, No. 22-20489, 2023 U.S. App. LEXIS 20522 at *5-6 (5th Cir. 2023) ("while the Federal Rules of Civil Procedure grant district courts the power to limit discovery, the rules start with the presumption that parties will at least be given an *opportunity* to conduct discovery" (emphasis in original)

Further, in discovery-dispute cases like *Perry*, *Whole Woman's Health* and *NAACP,* where courts held that the First Amendment privilege prevented discovery, the discovery sought was unrelated to the merits of the parties' claims and counterclaims. That is another important distinction between those cases and this one. LCMS's discovery requests go to the heart of its claims against CTX, the rogue regents, and the other individual defendants, Donald Christian and Christopher Bannwolf.[14] The requests for the identity of the regents who voted to wrongfully amend the CTX charter, bylaws, and policy manual seek information relating to the identity of the proper parties; the requests for information regarding the inner workings of the CTX Board go to who did what, when, how and why, to demonstrate the actions taken were improper; and the information sought relating to communications between board members, Christian, Bannwolf and others is designed to illuminate and help LCMS understand and explain to the Court the process that was followed and why it was contrary to the foundation of the relationship between CTX and its parent denomination and founder.  This discovery is crucial.

---

[14] LCMS contends that Christian, who was president of CTX at the time of the amendment to the charter, bylaws, and policy manual, and Bannwolf, who was chair of the CTX Board at the time, orchestrated the rebellion and breach of fiduciary duty by the rogue regents. *See* First Amended Complaint at ¶ 39.

The only First Amendment right that is implicated in this matter is LCMS's – its First Amendment right to govern itself. As noted in cases cited by CTX, "Courts have generally foresworn involvement in disputes internal to religious groups." *Whole Woman's Health*, 896 F.3d at 372.  The church autonomy doctrine "prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity." *Bryce*, 289 F.3d at 655. "Ecclesiastical decisions are generally inviolate; civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Rayburn*, 772 F.2d at 1167.  The CCM, which is the highest judicatory at LCMS, determined the actions of CTX and the rogue regents to be wrongful.   That decision has been approved by the Synod in convention, which is its highest ecclesiastical authority.  CTX refused to abide by this binding decision, thus depriving LCMS of its First Amendment right to self-adjudicate internal disputes, and essentially compelling LCMS to bring this suit—in which the Court will be bound to accept CCM's decision.[15]

**D.      Claims Of First Amendment Privilege Are Not Absolute**

Even if the Court determines that the First Amendment may apply to the unidentified documents that may not even exist, that is not the end of the inquiry.  CTX still bears the burden to demonstrate that the First Amendment applies to a particular document it seeks to exempt from discovery.  *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (noting that privilege "may not be tossed as a blanket over an undifferentiated group of documents"). Indeed, conclusory assertions of privilege are "insufficient to carry out the proponent's burden of

---

[15] CTX may argue that it did not bring this suit and therefore did not invite the Court to review this internal church dispute. But CTX has sought to dismiss this suit, and has instead brought one of its own. *See* Case No. 1:24-cv-176; CTX v. LCMS.

establishing" the relevant privilege. *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When privilege "has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to achieve its purpose." *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 520 (5th Cir. 2020). Assertions of privilege accordingly must "be specifically asserted" on a document-by-document basis. *Id.; see Perry,* 591 F.3d at 1153 n.1 (concluding "that some form of a privilege log is required and reject[ing] Proponents' contention that producing any privilege log would impose an unconstitutional burden"); *Smith*, 896 F.3d at 366 (noting that the third-party witness asserting First Amendment privilege provided a privilege log).

Further, if and when CTX establishes that a document not yet identified may in fact be subject to First Amendment protection, LCMS may be able to demonstrate a substantial need for that document that outweighs intrusion into CTX's constitutional rights. *See Perry*, 591 F.3d at 1161. For example, there is no constitutional right to breach a fiduciary duty or disregard the governance decisions of a denomination.  Accordingly, to the extent any of the former regents has documentation demonstrating which regents voted to amend the CTX charter, bylaws, and policy manual, which would help LCMS identify the proper parties to the lawsuit, that information should be discoverable regardless of any First Amendment implications.

**E.      The Court Has Already Issued A Confidentiality And Protective Order**

Finally, the Court has already foreseen the likelihood of production of confidential, sensitive or private information and issued a Confidentiality and Protective Order (Doc. 33). That order provides for identification and classification of sensitive information as Classified, and for the limited production and dissemination of any such information. With the exception of properly

14

identifying the parties to the case, and replacing "John Does 1-12" with the names of the regents who breached their fiduciary duty, LCMS sees no reason why information CTX may consider sensitive cannot be produced subject to the Confidentiality and Protective Order, which itself provides a mechanism for challenging any document's designation. *See* Doc. 33 at ¶ 11.

## Conclusion

LCMS requests that the Court deny CTX's Motion for a Protective Order, and further requests such other relief, both legal and equitable, to which it may be justly entitled.

Respectfully submitted,


By:   */s/ Steven Levatino*
     Steven C. Levatino
     State Bar No. 12245250
     **Levatino|Pace PLLC**
     1101 S. Capital of Texas Hwy.
     Bldg. K, Suite 125
     Austin, Texas 78746
     T: 512-637-1581
     F: 512-637-1583
     steven@lpfirm.com


By:   */s/ Andrew MacRae*
     Andrew F. MacRae
     State Bar No. 00784510
     MacRae Law Firm PLLC
     3267 Bee Cave Road
     Suite 107, PMB 276
     Austin, Texas 78746
     T: 512-565-7798
     andrew@macraelaw.co

By:    */s/ Gregg Kronenberger*
Gregg R. Kronenberger
State Bar No. 24039998
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
T: 512-777-4141
F: 512-402-3313
M: 512-923-3158
gregg@gkronenberger.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response has been filed through the CM/ECF system on November 1, 2024. I understand the CM/ECF system will send a Notice of Electronic Filing to the following counsel of record:

Daniel R. Richards
Clark Richards
Albert A. Carrion, Jr.
Richards Rodriguez & Skeith, LLP
611 West 15th Street
Austin, Texas 78701
**Attorneys for Defendants**

   */s/ Steven C. Levatino*
STEVEN C. LEVATINO