# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **THE LUTHERAN CHURCH – MISSOURI SYNOD, a Missouri nonprofit corporation** | § § § | |
| *Plaintiff*, | § | **Case No. 1:23-cv-1042-DAE** |
| **v.** | § § | |
| **DONALD CHRISTIAN, CHRISTOPHER BANNWOLF, CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1-12** | § § § § § | |
| *Defendants* | § | |
| | | |
| **CONCORDIA UNIVERSITY TEXAS,** | § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 1:24-cv-176-DAE** |
| **THE LUTHERAN CHURCH - MISSOURI SYNOD, an unincorporated association of Lutheran congregations, and THE LUTHERAN CHURCH - MISSOURI SYNOD, a Missouri Corporation,** | § § § § § | |
| **Defendants.** | § § | |

## RESPONSE TO LCMS'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

Defendant Concordia University Texas, Inc. ("CTX"), and Defendants Donald Christian ("Christian") and Christopher Bannwolf ("Bannwolf") submit this Response to Lutheran Church – Missouri Synod, a Missouri nonprofit corporation's ("LCMS") Objections to the Report and Recommendation of the Magistrate Judge ("Obj.") as follows:

## I.    INTRODUCTION

1.    The Magistrate found that the Lutheran Church—Missouri Synod, an association of Lutheran congregations and ministers ("Synod") is the real party in interest in this litigation with capacity to sue and be sued under Texas law. **Magistrate's Report and Recommendation** ("Report"). The Magistrate recommended that the suit initiated by LCMS on behalf of itself and Synod be dismissed for want of jurisdiction, and that the parallel suit initiated by CTX against both Synod and LCMS be remanded to state court for the same reason. *Id.*

2.    LCMS objects to the Report asserting that Synod, not neutral principles of federal civil procedure or Texas law, determines its capacity to sue and be sued. LCMS does not object to the findings that Synod holds the rights to the claims at issue in this litigation, all of which are based on Texas state-law.[1] LCMS's only objection is that it, not Synod, is the proper property to litigate those rights and it can do so in Federal Court as it pleases without regard for Synod's capacity or citizenship under state and federal law. Despite the inclusion of arguments not made before the Magistrate, LCMS still provides no law that supports its position.

## II.    MAGISTRATE'S FINDINGS AND RECOMMENDATIONS[2]

3.    <u>Synod holds alleged substantive rights in this case</u>. Relying on LCMS's own complaint and the documents attached to it, the Report finds that Synod holds the alleged substantive rights in this litigation and that Synod, not LCMS, is the real party in interest. **Report**, 7-9. These issues include (a) the contested ownership of CTX's property, *Id.* at 8 ("the Synod's bylaws acknowledge that LCMS (as "Corporate Synod") may hold title to certain property, but that property is considered property of the Synod."); (b) the alleged breach of a contract is for a contract between

---

[1] *See* **Report**, fn. 8 (finding no federal questions at issue in CTX's state court suit).

[2] The Report includes a lengthy summary of the underlying facts and procedural history of these proceedings which are unobjected to by LCMS. **Report**, 2-5; *See also* **Obj**.

Synod and CTX, as are the tortious interference claims, *Id.* at 8-9 ("to the extent the Synod's governing documents constitute a contract between CTX and the Synod, LCMS does not show why it is a party to that contract."); and (c) breach of alleged fiduciary duties owed to Synod, *Id.* at 9 ("Relatedly, LCMS fails to demonstrate why any Defendant owes fiduciary duties to LCMS as opposed to the Synod.")

4.      LCMS does not object to the Report's findings that the alleged substantive rights at issue in this case belong to Synod and not LCMS.[3] LCMS provides no record citation or argument that controvert the Report's conclusions that the alleged property rights, contract rights, and fiduciary duties belong to Synod and not to LCMS. *See* **Obj.** Instead, LCMS's only objection to these findings appears to be that it has the right to litigate Synod's substantive claims on Synod's behalf. **Obj.**, 27-28.

5.      <u>Synod is a citizen of Texas</u>. The Report found that by Synod's own admission, Synod has members in Texas. **Report**, 13. Based on that finding, the Report concludes that as an unincorporated association, Synod is a citizen of Texas. *Id.* LCMS does not contest that Synod has members in Texas. *See* **Obj**. LCMS's only objection to these findings is its claim, without any citation to applicable law, that Synod is not an unincorporated association capable of citizenship. **Obj.** at 28-29. LCMS's sole argument is its claim that the formation of LCMS as a nonprofit corporation precludes the existence of Synod as a separate unincorporated association. *See Id*. However, LCMS's own pleadings make it clear that all of the alleged substantive rights belong to Synod, not to LCMS. **Report**, 7-9. The only possible conclusion to be drawn from this is that

---

[3] LCMS claims the Report "supports this baseless conclusion with an impartial quote" from LCMS's own pleadings which states that LCMS filed the suit "on behalf of itself and Synod." **Obj.**, 27. However, LCMS fails to object to or grapple with the findings following this sentence in the Report which lay out the particularity of each issue in this litigation and how each of the alleged rights belong to Synod. *See* **Obj.**, 27-29.

despite the creation of LCMS as a nonprofit corporation, Synod has a separate and distinct existence as an association, the rights of which are to be adjudicated in this litigation.

6.    <u>Synod has capacity to sue and be sued</u>. Based on the documents LCMS attached to its own pleadings, the Report finds that Synod is an unincorporated nonprofit association under Texas law. **Report**, 16. As Texas law allows suits by and against unincorporated nonprofit associations, the Report finds that Synod has capacity to sue and be sued. *Id*. The Report further finds that neither Texas law nor the First Amendment prohibits litigation by or against unincorporated churches. *Id*. at 16-18. Based on these conclusions, the Magistrate recommends that LCMS's suit be dismissed, and CTX's suit against LCMS and Synod[4] be remanded to state-court for lack of diversity jurisdiction. *Id*. at 18.

7.    Ultimately this is the only finding and recommendation to which LCMS objects.[5] LCMS claims in a myriad ways that the Magistrate misunderstands both Texas and Federal law when it comes to determining organizational structure and capacity. *See* **Obj.** 27-29. Simply put, LCMS objects to the finding that Synod has capacity or citizenship for the basis of determining diversity jurisdiction because, according to LCMS, Synod has the right to determine that a separate corporation created by Synod can litigate all of its claims on its behalf. *See Id*. Though not articulated nor supported by any reference to federal rules of procedure or jurisdictional law, the implication of LCMS's argument is that LCMS's corporate citizenship should control for the purposes of determining diversity jurisdiction even if the rights are Synod's. *See* **Obj**.

---

[4] The Report finds that in its state court suit, CTX made cognizable state-based claims against Synod. **Report**, 14-15. LCMS does not object to these findings. **Obj.** 27-29.

[5] According to LCMS "it objects to the entirety of the findings and recommendations of the Report." **Obj.**, 27. This general objection is insufficient as "[p]arties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982). The only specific objections contained in LCMS's filing are on pages 27 through 29 and object exclusively to findings regarding Synod's capacity and corporate form (or lack thereof). **Obj.**, 27-29.

## III.     ARGUMENT

8.     <u>Standard of Review</u>. The Court reviews the Report *de novo*. Fed. R. Civ. P. 72(b)(3). Failure to raise an argument in front of the magistrate waives that argument on review by the Court. *See e.g. Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate court had issued its findings and recommendations, … Respondent has waived procedural default and exhaustion doctrine objections.") In its review of the Report, the Court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id*. The "purpose of the section is to "'permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.'" *Martin v. Schott*, No. 98-30986, 1999 U.S. App. LEXIS 39597, at *4 (5th Cir. 1999) (quoting *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

9.     LCMS's objections to the Report inappropriately advance wholly new arguments not made to the Magistrate and include previously unprovided "evidence" with no justification for its late inclusion in the record. Neither the new or old arguments, nor the new "evidence," support LCMS's urged conclusion that Synod is entity enough to hold litigable rights in CTX's property, governance, and contracts, but is not entity enough to be subject to the jurisdictional laws of Article III Courts. The Magistrate's Report is well-reasoned and is based on the record. Its legal reasoning is not overcome by the untimely argument or "evidence" presented by LCMS. The Court should rely on the report's findings and adopt the recommendation that LCMS's suit be dismissed and that CTX's suit be remanded back to Texas State court.

**Response to LCMS's Objections based on Texas Unincorporated Association's Act, the Internal Affairs Doctrine, and the Full Faith and Credit Clause.**

10.     <u>These arguments are untimely and should not be considered.</u> LCMS begins its argument by asserting that the Report's finding that Synod is an unincorporated association with capacity to

sue and be sued "misinterprets and misapplies" Texas' Unincorporated Non-profit Association's Act (TUNAA) and violates both "Texas' 'internal affairs doctrine'" and the "Full Faith & Credit, Commerce, and Due Process clauses of the United States Constitution." **Obj.**, 2-3. No argument contained in this section was made to the Magistrate Judge. *Compare* **Obj.**, 2-20 *with* **LCMS's Response to Motions to Dismiss and to Remand** *and* **LCMS's Sur-Reply in Opposition to Motion to Dismiss and Motion to Remand**. These arguments are therefore waived and should not be considered by the Court. *See Cupit*, 28 F.3d 532, 535 (5th Cir. 1994).

11.    <u>These arguments are also unavailing</u>. Even if the Court considers the untimely arguments raised by LCMS, they do not support the position that Synod lacks capacity or citizenship for the purposes of jurisdictional analysis under federal law. First, LCMS's insistence that secondary materials be used to contradict the unambiguous terms of Texas statutes is improper. Second, the very purpose of TUNAA was to recognize the existence of unincorporated organizations separate from their members, and there is no evidence that Synod, an admitted membership association, is incorporated. And third, the jurisdictional determinations of organizational capacity are not internal corporate affairs protected by the "internal affairs doctrine" or the Full Faith and Credit, Commerce, and Due Process clauses.

12.    <u>Consideration of secondary sources to "interpret" TUNAA is inappropriate</u>. LCMS argues that the Magistrate "failed to examine the general purpose and intent" of TUNAA. **Obj.**, 6. LCMS then relies on prefatory notes from the Act's adoption and from the Uniform Law Commission to assert that the incorporation of LCMS by Synod fulfills the Acts requirements. *Id*. at 6-13. LCMS also urges the Court to consider the "consequences" of misconstruing the act. *Id*. at 13-16. LCMS's reliance on these tools of statutory construction is misplaced. Only when the words of a statute are ambiguous should courts "resort to rules of construction or extrinsic aids." *Entergy Gulf States,*

*Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Otherwise, where the text of a statute is clear, that text is "determinative of [the Legislature's] intent." *Id*.

13.     The language of TUNAA could not be clearer. Under TUNAA "[a] nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding or in an arbitration, mediation, or any other form of alternative dispute resolution." Tex. Bus. Org. Code § 252.007. A "nonprofit association" is defined as "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Org. Code § 252.001. There is no ambiguity in this language, therefore reliance on secondary materials or other rules of statutory construction to modify the statute's meaning is improper. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (Tex. 2009). In this case, there is no objection by LCMS that Synod (1) is an association and (2) has members. *See* **Obj.**[6] Nor is there evidence that Synod, as opposed to LCMS, is incorporated. *See* **Report,** 13. Not even Synod's bylaws support the proposition that Synod itself is incorporated. *See* **Complaint**, Ex. 2 at 22-23 §1.2.1(f)&(v) (defining "Synod" and "Corporate Synod" separately). Therefore, the Court should adopt the findings and recommendations of the Report that under Texas law, Synod is an unincorporated non-profit association with capacity to sue and be sued. **Report**, 15-16.

14.     <u>LCMS and Synod are distinct entities.</u> LCMS asserts that by applying the unambiguous language of TUNAA to Synod, the Report has somehow created a previously non-existent entity. **Obj.**, 4-6.[7] But the Report did not "create" Synod as an unincorporated association, Texas law

---

[6] Nor could LCMS object to such conclusion as Synod's bylaws define it as "the association of self-governing Lutheran congregations and all its agencies." **Complaint**, Ex. 2 at 23 §1.2.1(v); *see also* **Report**, 13. Its members are defined as both corporate and individual members. *Id*. at (m).

[7] As found by the Report, this argument is paradoxical as LCMS repeatedly refers to the Synod "creating" LCMS, and yet not being a separate entity from LCMS. *See* **Report, 7**. This paradox is repeatedly on display in LCMS's Objections and supporting materials. *See* **Obj.**, 7(…"Synod's choice to formally incorporate LCMS…";) 11 ("that

***recognizes*** it as one. *MT Falkin Invs., L.L.C. v. Chisholm Trail Elks Lodge No. 2659*, 400 S.W.3d 658, 666 (Tex. App.—Austin 2013, pet. denied) (finding that with the enactment of TUNAA, Texas law recognizes unincorporated nonprofit associations as "separate legal entities" from their members.)[8]

15.     LCMS then argues that somehow in incorporating LCMS, Synod itself "incorporated" for the purposes of TUNAA. **Obj.**, 10-13. LCMS provides no legal support for this proposition. *See Id*. There is no provision of TUNAA or any other Texas law that says anything to the effect that "a non-profit membership association which incorporates a separate entity to effectuate the purposes of TUNAA is not a 'nonprofit association' under this law." *See e.g. Turner v. Church of Jesus Christ of Latter-Day Saints*, No. 3:95-CV-1354-P, 1996 U.S. Dist. LEXIS 23175 at *14, (N.D. Tex. 1996) (the court could not identify Texas laws that would support a corporate church's argument that its unincorporated counterpart was improperly joined and remanded for lack of diversity jurisdiction). By contrast, it is well recognized that when one entity incorporates another, the two remain distinct for legal proceedings. *See e.g. Peterson v. Chi., R. I. & P. R. Co.*, 205 U.S. 364, 392 (1907) ("The new corporation was a separate legal entity, and, whatever may have been the motives leading to its creation, it can only be regarded as such for the purpose of legal proceedings.") (quoting *Conley v. Mathieson Alkali Works*, 190 U.S. 406, 409, 23 S. Ct. 728, 729

---

Synod exists as an ecclesiastical body…is irrelevant to the application of TUUNA because LCMS is there to satisfy every purpose for which the statute exists…";) 13 ("…Synod's act of incorporating LCMS for operation in the secular world as its civil law entity…";) Ex. 1 ¶ 9 ("Therefore, the Synod has established civil law entities…";) Ex. 1 ¶ 10 "Foremost among these is the entity now titled The Lutheran Church—Missouri Synod ('LCMS, Inc.')('Inc.' is not part of the official corporate name ***which is shared identically with the name of Synod***…")") (emphasis added).

[8] LCMS inexplicably and repeatedly asserts that the Report's application of TUNAA "unduly expands its scope." *See e.g.* **Obj.** at 6. Yet, LCMS's own interpretation would require a reversion to Texas law that pre-existed TUNAA. *MT Falkin Invs., L.L.C.*, 400 S.W.3d at 664-65 (Prior to the adoption of Texas' Unincorporated Associations Act "unincorporated nonprofit associations were not considered separate legal entities and had no existence apart from their individual members.")

(1903)). Even in the cases from states which, unlike Texas, recognize the transfer of capacity from an ecclesiastical church to a corporate church cited by LCMS in its later First Amendment arguments, the two are still treated as distinct entities. *See e.g. Trinity Presbyterian Church v. Tankersley*, 374 So. 2d 861, 866 (Ala. 1979) ("The courts in this state [Alabama] have long recognized the concept that, whenever there is an incorporated church, there exists two entities."). LCMS has not identified any federal or state law that would permit this Court to disregard Synod's "secular existence derived from applicable Texas law." *See Masterson v. Diocese of Northwest Texas*, 422 S.W.3d 594, 608 (Tex. 2013). Therefore, the Court should adopt the Report's findings and recommendations that Synod is an unincorporated nonprofit association under Texas law with capacity to sue and be sued.

16.    <u>LCMS's feared "consequences" of the Report are only the uniform application of the law to itself and Synod.</u>[9] LCMS argues that TUNAA must be applied to Synod as it urges because otherwise it has "earth-shaking" implications. **Obj.,** 14. Despite LCMS's hyperbole, the consequences it fears are not novel nor applicable to only Synod:

a.    LCMS claims the Report creates "different rules" for Synod because (i) Synod is now subject to personal jurisdiction anywhere its members reside and (ii) no case can ever be removed to federal court if Synod is made a party "as is LCMS's right as a Missouri corporation." Taking these each in turn, neither prove to be the bogey-man LCMS fears. First, it is unclear how Synod is being treated "different" than any other unincorporated association for whom state's courts retain personal jurisdiction because their membership resides in that state. For instance, these same concerns were raised by labor unions and rejected by the U.S. Supreme Court. *United Steelworkers of Am. v. R. H. Bouligny, Inc.*,

---

[9] Again, consideration of the "consequences" of the Report's alleged interpretation of TUNAA is improper given the unambiguous terms of the Texas law. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437.

382 U.S. 145, 150-151 (1965) (dismissing concerns that "that it is not good judicial administration, nor is it fair, to remit a labor union or other unincorporated association to vagaries of jurisdiction determined by the citizenship of its members and to disregard the fact that unions and associations may exist and have an identity and a local habitation of their own.") Second, if Synod does not hold the alleged rights at issue in future hypothetical litigation but is joined to state court proceedings, then LCMS can certainly remove the case to federal court for fraudulent joinder. *See e.g. Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) ("the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant.") But, in cases such as this, where Synod holds and asserts litigable rights[10], has capacity under state law to sue and be sued, and is a citizen of that state, as determined by the Report, then the case cannot be removed. *Hicks v. Martinrea Auto. Structures (United States), Inc.*, 12 F.4th 511, 515 (5th Cir. 2021). There is nothing novel about this conclusion. *See e.g. Turner*, 1996 U.S. Dist. LEXIS 23175 at *14.

b.       According to LCMS, there is no certainty or uniformity on which Synod can now rely because different states have different laws about unincorporated associations. **Obj.**, 14-15. Yet, this is true for all unincorporated associations that operate at a national level, and this concern was rejected by the U.S. Supreme Court when it determined that

---

[10] LCMS repeatedly asserts that Synod is a "purely ecclesiastical body." **Obj.**, 14. Yet Synod purports to hold purely secular rights and have those rights enforced by purely secular courts. *See e.g.* **Complaint**, ¶¶ 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77, (alleged rights of corporate governance over CTX); **Complaint**, Ex. 2 at p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance over CTX); **Complaint**, Ex. 6 (alleged right to reversionary interest in CTX's Property); **Complaint**, Ex. 2 at p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency such as CTX) (alleged right to property); **Complaint**, ¶¶ 29, 36, 45, 46, 65, 71, 81, (alleged fiduciary duties).; *see also* **Report**, 7-9 (discussing LCMS's lack of rights in CTX's property, governance, and its officers). Synod cannot have its cake, and it eat it too by being too ecclesiastical to suffer the "absurd results" of federal jurisdictional law, *see* **Obj.**, 13, but secular enough to assert litigable rights over CTX's governance and property, and the duties of its officers.

unincorporated associations are citizens anywhere their members reside. *United Steelworkers of Am.*, 382 U.S. at 150-151.

c.      According to LCMS, Synod can now be cited in a state court for "doing business without authority." **Obj**., 16. If Synod, or LCMS for that matter, is conducting business in a state that requires specific licensure and they have failed to obtain the necessary permissions – then yes, they may be subject to such a suit. But LCMS does not explain how that is any different than any other organization that operates in multiple states. Nor does LCMS explain how the Report's findings have altered this reality for it or Synod. LCMS seems to assert this could happen even if Synod never "attempted to operate" in that state. **Obj**., 16. It is unclear how this vague hypothetical could come to pass, let alone have "earth-shaking" consequences for anyone.

d.      Finally[11], according to LCMS, under the Report, LCMS is no longer allowed to rely on Missouri law because it "must conform to the laws of every jurisdiction in the nation." **Obj**., 16. But the Report does not find that LCMS is *not* incorporated under Missouri law. *See* **Report**. It simply finds that Synod is not. *Id.* at 16. Moreover, it is not novel that a corporation or other entity, individual or otherwise, which avails itself of the privilege of conducting activities in a State would be subject to that State's laws. *See e.g. Luciano v. SprayFoamPolymers.com*, LLC, 625 S.W.3d 1, 9-10 (Tex. 2021) ("When a party "purposefully avails itself of the privilege of doing business in Texas, it has clear notice that it is subject to suit there.")

---

[11] LCMS also asserts the existences of consequences based on the First Amendment and the Internal Affairs Doctrine. **Obj**., 14. These arguments are not supported by law and are in the same hyperbolic vein as LCMS's other hypothesized "consequences." As these issues were separately briefed by LCMS, a full response is provided in the following pages and for brevity purposes the arguments will not be re-made here.

17.      LCMS's hypothesized "earth-shaking" consequences are nothing but the application of the same laws that have existed long before this suit. None of these provide a reason to disregard the unambiguous text of TUNAA as LCMS urges. *Contra* **Obj.**, 13. The Court should therefore adopt the Report's conclusion that Synod is an unincorporated nonprofit association with capacity to sue and be sued under Texas law.

18.      <u>Neither the Internal Affairs Doctrine nor any Constitutional clause is offended by a finding that Synod is an unincorporated association under Texas law</u>. Rather inexplicably, LCMS argues that applying Texas law on capacity as required by Fed. R. Civ. P. 17(b)(3) interferes with how LCMS conducts its internal affairs in violation of both the Internal Affairs Doctrine and the Full Faith and Credit, Commerce, and Due Process clauses of the constitution. **Obj.**, 16-20. To support its position, LCMS contends that "there is no dispute that Synod made the explicit choice…to formally incorporate as LCMS in Missouri…". **Obj.**, 18. But that is a misrepresentation of Synod's own pleadings and governing documents. There is no dispute that Synod chose to create a corporation called LCMS in Missouri. However, there is also no dispute that Synod itself is not incorporated. Indeed, the Report found no evidence of Synod's incorporation. **Report**, 13. Moreover, LCMS's complaint and Synod's governing documents attached to it explicitly differentiate between "Corporate Synod" and "Synod" the association of Lutheran Congregations and Ministers. **Complaint** ¶¶ 9, 15-16; **Complaint** Ex. 2, p.2, § 1.2.1(f), p.3 § 1.2.1(v). And, as discussed by the Supreme Court, where one entity creates another, the two remain separate entities for legal proceedings. *Peterson*, 205 U.S. at 392.

19.      As to the substance of LCMS's argument, the question of capacity is not an "internal affair" which could subject a corporation to conflicting legal demands that would offend any law or

constitutional provision. *Contra Id*.  "Internal affairs" refers to laws a corporation must follow in order to comply with corporate codes of the State in which they are incorporated such as:

> steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Matters which may also affect the interests of the corporation's creditors include the issuance of bonds, the declaration and payment of dividends, loans by the corporation to directors, officers and shareholders, and the purchase and redemption by the corporation of outstanding shares of its own stock.

Restat 2d of Conflict of Laws, § 302 (2nd 1988). Nothing in the determination of Synod's jurisdictional capacity implicates LCMS's ability to conform its corporate conduct to Missouri law, and LCMS provides nothing more than conclusory statements to support this argument. Given its frivolity and conclusive nature, this argument should be disregarded in its entirety. *Nettles*, 677 F.2d at 410 n.8.

20.    Moreover, capacity is a procedural and jurisdictional, not substantive, question. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) ("the issue of capacity is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate."); *see also Busby v. Elec. Utils. Emps. Union*, 323 U.S. 72, 76, 65 S. Ct. 142, 145 (1944) (Frankfurter, concurring) ("suability of an unincorporated labor union is a local procedural problem to be determined, according to Rule 17 (b)…"); *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 19 n.4 (2d Cir. 2018); *Schippers v. United States*, 715 F.3d 879, 891 (11th Cir. 2013).

21.    In matters of procedure, the laws of the forum state, here Texas, apply. *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 872 (Tex. 2017). This is true even in cases where the substantive law of another state applies to the claims, such as litigating the internal affairs of

foreign corporations.[12] *See e.g. Connolly v. Gasmire*, 257 S.W.3d 831, 839 (Tex. App.—Dallas 2008, no pet.*); see also Moonlight Invs. Ltd. v. John*, 192 S.W.3d 890 (Tex. App.--Eastland 2006, pet. denied). The Supreme Court has said the same in addressing the application of the Full Faith and Credit clause. *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) ("The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' Since the procedural rules of its courts are surely matters on which a State is competent to legislate, it follows that a State may apply its own procedural rules to actions litigated in its courts.")[13] The application of Texas law to a basic question of civil procedure, as required by Federal Rule of Civil Procedure 17(b), therefore does not violate either the internal affairs doctrine or any other Constitutional clause cited by LCMS.

22.      LCMS contrives to frame the Report's application of Texas laws on organizational capacity as a "judicial invention" of Synod as an entity and a violation of both Texas laws and multiple constitutional clauses. Yet, application of Texas law on the question of capacity is precisely what the law requires. Fed. R. Civ. P. 17(b)(3) (for parties which are not individuals or corporations, capacity is determined by the law of the state in which the court sits.) LCMS's argument that because Synod chose to form LCMS as an incorporated entity in Missouri somehow obviates the application of Texas law to Synod's own capacity as a separate entity is unsupported by any law.

---

[12] This case, however, is not about LCMS's or even Synod's corporate governance, and there is no dispute that the substantive laws of Texas apply to the claims in these proceedings.

[13] It follows that neither the Commerce clause nor the Due Process clause are disturbed by the application of local procedural laws. In fact, LCMS's only legal "support" that these Constitutional clauses are somehow implicated by the Report's findings is a case from the Delaware Supreme Court describing the implications for relationships between stockholders and the corporation/corporate officers when competing state laws are applied to the actions of corporate officers. **Obj.**, 19-20 (quoting *McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987)). LCMS provides no state or federal case law suggesting that application of procedural rules on capacity implicate either the Commerce or Due Process clauses.

The Court should therefore adopt the Report's findings and recommendations that the Court lacks jurisdiction, that LCMS's suit be dismissed, and that CTX's suit remanded back to Texas State court.

**Response to LCMS's Objections based on the First Amendment.**

23.    LCMS also asserts that the Report's finding that Synod is an unincorporated nonprofit association with capacity under Texas law violates the First Amendment and Church Autonomy Doctrine. **Obj**., 20-27. Once again, its arguments are unsupported. First, LCMS does not cite a single case in which the application of neutral principles of procedural or jurisdictional laws violates the Church Autonomy Doctrine or the First Amendment. Second, LCMS once again tries to rely on cases from outside Texas in which other states recognize the existence of ecclesiastical and corporate churches. This does not comply with the mandates of Rule 17(b) nor do any of these cases address this issue of citizenship for diversity jurisdiction purposes. Finally, LCMS includes a new affidavit by John Sias. This is procedurally improper both because it was not presented to the Magistrate and because the motions to remand and dismiss should not be determined by the consideration of extrinsic materials.

24.    <u>No case cited by LCMS supports the proposition that applying neutral principles of procedural law on capacity violates the Church Autonomy Doctrine or First Amendment</u>. In its objections, LCMS cites a litany of cases dismissed for lack of jurisdiction based on the Church Autonomy Doctrine. **Obj**., 20-24. LCMS asserts the determination of Synod's capacity similarly implicates this Doctrine, **Obj**., 24-27, which requires judicial abstention from cases involving faith and doctrine, and matters of church government. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). But, other than conclusively repeating the phrases "governance" and "polity," and the Doctrine's general rules, LCMS provides no support for the proposition that

the Report's conclusions somehow interfere with Synod's autonomy. **Obj**., 24-27. By contrast, in the cases upon which LCMS relies the interference is evident. In those cases, the nature of ***claims and relief*** sought would require judicial interference in how churches conducted internal matters from religious employment to doctrinal compliance:

a. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 698 (1976) (judicial intervention in the defrocking of a Bishop and Diocesan reorganization was improper.);

b. *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 441 (1969) (determination of whether parent church abandoned tenets of faith inappropriate in resolving property dispute with local churches.);

c. *Kreshik v. Saint Nicholas Cathedral of Russian Orthodox Church*, 363 U.S. 190, 191 (1960) and *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 115 (1952) (court could not interfere with ecclesiastical decision that appointee of Russian Orthodox church would occupy a New York Cathedral.);

d. *Our Lady of Guadalupe Sch*, 591 U.S. at 738 (Court could not intervene in employment dispute of teachers responsible for religious education.);

e. *In re Diocese of Lubbock*, 624 S.W.3d 506, 509 (Tex. 2021) (Court could not probe whether church followed its own procedures in investigating a Deacon accused of sexual misconduct.);

f. *Westbrook v. Penley, 231 S.W.3d 389, 391* (Tex. 2007) (Court could not resolve tort litigation stemming from pastor's disclosure to congregation of information gained through religious counseling of parishioner.);

g. *Grace Evangelical Lutheran Church v. Lutheran Church-Missouri Synod*, 454 N.E.2d 1038, 1040 (1983) and *Werling v. Grace Evangelical Lutheran Church*, 487 N.E.2d 990, 991-

93 (1985) (Court could not enforce lease between LCMS and withdrawn local church where option provision required investigation of doctrinal compliance.)

LCMS does not provide a single case in which the Church Autonomy Doctrine has barred the application of neutral principles of law to questions of capacity. *See* **Obj.** 20-27. And it cannot, because these laws must be applied "in the same manner as [courts] apply those principles to other entities and issues." *See Masterson*, 422 S.W.3d at 606-08. As clearly stated by the Supreme Court, neither the church autonomy doctrine nor the First Amendment requires that "religious institutions enjoy a general immunity from secular laws." *Our Lady of Guadalupe Sch*, 591 U.S. at 746. The Court should therefore adopt the Report's findings and recommendations.

25.    *Folwell, Tankersly, and Willis are irrelevant and inapplicable*. LCMS goes on to cite three cases from Florida, Alabama, and Kentucky for the proposition that churches having a dual existence as a civil and ecclesiastical entities creates "no friction" in the application of secular laws. *See* **Obj.**, 24-25. First, these cases are irrelevant to the validity of the Report's recommendations as in each of these cases it is acknowledged that it is the position of these states' courts to recognize this relationship. *Folwell v. Bernard*, 477 So. 2d 1060, 1063 (Fla. App. 1985) (Holding that Florida law recognizes the existence of a separate purely ecclesiastical entity when a church forms a corporation); *Tankersley*, 374 So. 2d at 866 (Same under Alabama law); *Willis v. Davis*, 323 S.W.2d 847, 848 (Ky. 1959) (citing a since repealed Kentucky statute for the formation of the religious corporation.)[14] Texas courts by contrast have not adopted the position of these states. *See Turner*, 1996 U.S. Dist. LEXIS 23175 at *14. Thus, these cases are irrelevant to the determination of Synod's capacity under Rule 17(b). Fed. R. Civ. P. 17(b)(3) (requiring application

---

[14] LCMS also cites the American Jurisprudence article on congregational churches, but there is nothing in that article to support its position. *See* 66 Am.Jur.2d Religious Societies § 5.

of state law to the capacity of non-individual and non-corporate parties). Moreover, in none of these proceedings was the civil law counterpart of an ecclesiastical denomination asserting a right to proceed with state law claims in federal court on the basis of diversity jurisdiction. *See Folwell*, 477 So.2d 1060; *Tankersley*, 374 So.2d 861; *Willis*, 323 S.W.2d 847.

26.      Second, contrary to LCMS's assertion, it is clear that these dual entities ***can*** cause friction between religious organizations and the civil laws of this nation. *See* **Obj**., 25. For instance, the civil laws of this nation require litigation in the name of the real party interest (the party that holds the substantive right). *Farrell Const. Co. v. Jefferson Par., La.*, 896 F.2d 136, 140 (5th Cir. 1990). Yet, if LCMS's position were adopted, the real party in interest in this case – Synod – would not be required to litigate its interests and could delegate that right to any party it chose by amending its bylaws. *Contra Farrell Const. Co., La.*, 896 F.2d at 140. Additionally, federal diversity jurisdiction requires complete diversity – no parties can share citizenship. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). And even where nominal parties are permitted to litigate issues on behalf of third parties, the doctrine of the real party in controversy requires application of the citizenship of the real party to the controversy in the jurisdictional analysis. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980). Yet again, LCMS's position would require this Court to ignore these long-established civil laws so that it could litigate Synod's state-based interests in federal courts without regard for Synod's own citizenship. *Contra Id*.; *see also Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 359 (5th Cir. 2017); (*citing Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 865 n.10 (5th Cir. 2003)).[15]

---

[15] The Report made no findings or recommendations based on the Real Party to the Controversy doctrine. *See* **Report**. However, should the Court be persuaded that LCMS is allowed to litigate Synod's rights on Synod's behalf, the Court should still dismiss LCMS's suit and remand CTX's state court lawsuit for lack of subject matter jurisdiction as Synod's citizenship clearly controls. *See* **Motion to Dismiss**, ¶¶ 39-43.

27.     <u>LCMS's newly included "evidence" should be disregarded by the Court</u>. In its Response to the Motions to Dismiss and Remand, LCMS included a declaration by John Sias. *See* **Response to Motions to Dismiss and Remand,** Ex. 1 ("Sias Declaration"). Now, in its objections to the Magistrate's report and recommendations, it has included a new declaration with over 35 pages of additional materials attached. **Obj.,** Ex. 1 ("New Sias Declaration"). Courts have broad discretion to disregard new evidence attached to objections which were not presented to the Magistrate. *Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (citing *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998). In exercising this discretion, courts should consider: "(1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party …; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted."

28.     The Court should exercise this discretion and disregard this untimely submitted "evidence" as the factors weigh heavily against its consideration. First, LCMS offered no explanation for not submitting this declaration to the Magistrate other than to place the blame for its now late inclusion in the Report. *See* **Obj.,** 25-26 ("[T]he Report now makes a more immersive discussion of Synod/LCMS polity and governance a necessity. To that end, LCMS attaches the declaration of Rev. Dr. John W. Sias…") But the 5th Circuit has made clear that "[l]itigants may not [] use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (internal quotations omitted). Second, the evidence is irrelevant as neutral principles of law, not deference to religious organizations, apply to questions of entity formation and capacity. *See Masterson*, 422 S.W.3d at 606-08. Third, the evidence was clearly available as Mr. Sias already submitted one declaration

for the Magistrate's consideration and the newly attached publications are from the 1800s. *Compare* **Sias Declaration** *with* **New Sias Declaration**. Finally, the inclusion of these materials is prejudicial because it impermissibly seeks to interject external religious materials into a jurisdictional decision which requires the application of neutral laws, not ecclesiastical doctrine.

29.     Moreover, like the original Sias Declaration, the New Sias Declaration should not be considered by the court in resolving this matter. CTX's motion to dismiss for lack of jurisdiction is a facial attack on the pleadings and consideration of extrinsic evidence is inappropriate in these circumstances. *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020) ("A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction."); *see also Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Apex Dig., Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444 (7th Cir. 2009).[16] Furthermore, the Court should disregard the New Sias Declaration as an impermissible attempt to use extrinsic evidence to contradict, vary, or add to the terms of Synod's unambiguous governing documents. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc*., 590 S.W.3d 471, 483 (Tex. 2019) and because it inappropriately seeks deference to a religious entity on a secular matter. *Masterson*, 422 S.W.3d at 606-08.

30.     However, even if the Court does consider the New Sias Declaration, as demonstrated above, it provides no basis for the Court to reject the Report's findings and recommendations. As stated by the Supreme Court, corporations are separate entities from those that create them "and, whatever may have been the motives leading to their creation, it can only be regarded as [a separate corporation] for the purposes of legal proceedings." *Peterson*, 205 U.S. at 392 (internal quotations omitted). Regardless of its reasons for creating LCMS, Synod, the association of congregations

---

[16] LCMS objects that the Sias Declaration is "not even mentioned," by the Magistrate's Report and Recommendation. **Obj**. at 29. Yet, this is wholly appropriate given the procedural posture of these proceedings.

and individuals, is the real party in interest to this litigation because it holds the alleged rights at issue. **Report**, 7-9. Synod is a citizen of Texas because it has members present in the State. *Id.* at 13. As such, it shares citizenship with CTX, Christian, and Bannwolf who are all indisputably Texas citizens. Applying neutral principles of Texas law, Synod has capacity to bring and defend against suits. *Id*. at 15-16. As such, the Court should adopt the Report's findings and recommendations to dismiss LCMS's suit and remand CTX's suit back to state court.

## IV.    PRAYER

For the foregoing reasons, CTX, Christian, and Bannwolf request that the Court adopt the findings and recommendations of the Report, dismiss LCMS's Complaint against CTX, Christian, and Bannwolf, remand CTX's petition to the State District Court of Travis County for lack of jurisdiction, and further request that the Court grant these parties all such further relief to which they are justly entitled at law and in equity.

Respectfully submitted,

*/s/ Daniel R. Richards*

**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
**ATTORNEYS FOR DEFENDANTS CONCORDIA UNIVERSITY TEXAS, INC., DONALD CHRISTIAN AND CHRISTOPHER BANNWOLF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of January 2025, I electronically filed the above and foregoing document, which will send notification of such filing to:

Steven C. Levatino
Levatino & Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
steven@lpfirm.com

Andrew F. MacRae
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
andrew@macraelaw.co

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com

Kevn Dubose
Alexander Dubose & Jefferson LLP
1844 Harvard Street
Houston, Texas 77008
kdubose@adjtlaw.com

*/s/ Daniel R. Richards*

**DANIEL R. RICHARDS**