UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE LUTHERAN CHURCH MISSOURI SYNOD,<br>*Plaintiff* | § § § § | No. 1:23-cv-01042-DAE |
| v. | § § | |
| DONALD CHRISTIAN, ET AL.,<br>*Defendants* | § § § | |
| | § | |
| CONCORDIA UNIVERSITY TEXAS,<br>*Plaintiff* | § § § § § | No. 1:24-cv-00176-DAE |
| v. | § § | |
| THE LUTHERAN CHURCH MISSOURI SYNOD, ET AL.,<br>*Defendants* | § § § § | |

ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation

("Recommendation") filed by United States Magistrate Judge Dustin M. Howell.

(Dkt. # 52.)  On April 3, 2024, Defendants Concordia University Texas ("CTX"),

Donald Christian ("Christian"), and Christopher Bannwolf ("Bannwolf") filed a

Motion to Dismiss in case 1:23-cv-1042-DAE (the "2023 case").  (Dkt. # 13)

(2023 case).  On April 3, 2024, Plaintiff CTX filed a Motion to Remand in the

related case 1:24-cv-176-DAE (the "2024 case"). (Dkt. # 5) (2024 case). The parties timely filed their respective responses to each motion.

On November 20, 2024, Judge Howell submitted a Report and Recommendation recommending that the Court grant both motions. (Dkt. # 52) (2023 case).[1] On January 2, 2025, Lutheran Church – Missouri Synod ("LCMS") filed Objections to the Recommendation. (Dkt. # 58) (2023 case). On January 8, 2025, CTX filed its response to the Objections. (Dkt. # 59) (2023 case).

The Court finds this matter suitable for disposition without a hearing. After reviewing the Recommendation and the information contained in the record, the Court **ADOPTS** the Recommendation. The Motion to Dismiss and Motion to Remand are **GRANTED.**

BACKGROUND

The Court agrees with Judge Howell's recitation of the facts and incorporates them in full:

The parties include the Lutheran Church – Missouri Synod ("the Synod"), which is a religious denomination governed by its constitution and bylaws. (See Dkts. ## 11-1 (constitution), 11-2 (bylaws)) (2023 case). The eponymous Lutheran Church – Missouri Synod ("LCMS") is a Missouri nonprofit

---

[1] For purposes of this Order, the Court will primarily cite to the docket entries in the 2023 case, based on the parties' agreed motion to consolidate these cases for the determination of the motions at issue here. (Dkt. # 18) (2023 case).

corporation that, according to LCMS, is the Synod's "civil law reflection" and referred to as "Corporate Synod" in the Synod's bylaws.  (Dkt. # 10 at 6–7) (2023 case).  CTX is a Lutheran university in Austin, Texas, founded by affiliates of the Synod's predecessor organization.  (Dkt. # 13 at 3) (2023 case).

This lawsuit involves disputes regarding CTX's November 2022 amendment to its Articles of Incorporation and Bylaws to provide for corporate self-governance separate from the LCMS and/or Synod and a reversionary interest in the university real property comprising the CTX main campus.  (Dkt. # 1 at 6, 15) (2023 case).

On August 1, 2023, LCMS filed a federal lawsuit against CTX asserting claims for declaratory judgment, breach of contract, breach of fiduciary duties, and violations of the Texas Business Organization Code.  (Dkt. # 1) (2023 case).  On February 29, 2024, LCMS filed its Amended Complaint.  (Dkt. # 11) (2023 case).

In January 2024, approximately four months after LCMS filed its 2023 suit, CTX sued LCMS and the Synod in Travis County, Texas.  (Dkt. # 1-1) (2024 case).  In the 2024 suit, CTX seeks declaratory judgment that: the CTX board of regents had authority to make the amendments to CTX's governing documents, that the Synod and LCMS do not have the authority to elect regents to CTX's board, that CTX did not breach any fiduciary duty owed to the Synod or

3

LCMS, and that neither the Synod nor LCMS is entitled to any reversionary interest in CTX's new campus property or to damages associated with the loss of that property interest. (Id.) The 2024 case was thereafter removed to federal court on February 21, 2024. (Dkt. # 1) (2024 case).

CTX moves to dismiss LCMS's 2023 suit against it for lack of subject-matter jurisdiction and failure to join indispensable parties. (Dkt. # 13) (2023 case). CTX also moves to remand the 2024 case. (Dkt. # 5) (2024 case). The motions center on the same arguments: that the Synod is both a non-diverse (Texas) defendant capable of being sued and a proper party to this case and therefore, it would be improper for this Court to exercise jurisdiction over any claim. (Dkt. # 52 at 5) (2023 case).

## APPLICABLE LAW

### I.    Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider

"[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n,

834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1)(C). Findings to which no specific

objections are made do not require de novo review; the Court need only determine

whether the Recommendation is clearly erroneous or contrary to law. United

States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.    Motion to Dismiss

        Federal courts are courts of limited jurisdiction, possessing "only that

power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256

(2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and

the burden of establishing the contrary rests upon the party asserting jurisdiction."

Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 258-59 (5th Cir.

2014) (quoting Kokkonen, 511 U.S. at 377).

        In considering a motion to dismiss for lack of subject matter

jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint

supplemented by undisputed facts evidenced in the record, or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts."

<u>Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

DISCUSSION

I.    <u>Whether the Synod is an Unincorporated Association Under Texas Law</u>

The Recommendation concludes that the Synod is an unincorporated association under Texas law.  (Dkt. # 52 at 8, 13, 16) (2023 case).  LCMS objects to this finding on the basis that the Magistrate Judge misinterprets and misapplies the law arising under Chapter 252 of the Texas Business Organizations Code, which is Texas's codification of the Uniform Unincorporated Nonprofit Association Act ("TUUNAA").  (Dkt. # 58 at 4) (2023 case).  LCMS also argues the Recommendation violates Texas' "internal affairs doctrine" as formalized in the Texas Organizations Code in mandatory, non-discretionary terms.  (<u>Id.</u> at 3.)  Finally, LCMS argues the Recommendation violates the First Amendment and Church Autonomy Doctrine.  (<u>Id.</u> at 20.)  The Court addresses each objection in turn.

A.    <u>Texas Law Objection</u>

LCMS claims that the formation of LCMS as a nonprofit corporation precludes the existence of Synod as a separate unincorporated association.  (<u>Id.</u> at 13.)  According to LCMS, TUUNAA is not intended to, and does not, create a

parallel "unincorporated nonprofit association" where a group has already "chosen to incorporate." (Id. at 6.)

The issue of a "parallel" entity in a church-type dispute has been recognized amongst some Fifth Circuit district courts, albeit briefly. For instance, in Turner v. Church of Jesus Christ of Latter-Day Saints, the church and its "separate" corporate entities similarly argued that the LDS Church was not a proper party defendant, and as such could not be considered for purposes of determining diversity jurisdiction. No. 3:95-CV-1354-P, 1996 WL 34447787, at *1 (N.D. Tex. Feb. 22, 1996). As LCMS argues here, the defendants claimed that once a church decides to incorporate, "there is simply no remaining 'unincorporated association' amenable to suit." Id. at *3. The Turner court concluded that because there is no clear, controlling substantive law regarding the citizenship or capacity of the noncorporate form of a church, and because the court must resolve such uncertainties in favor of plaintiffs, the plaintiffs' motion to remand was granted. Id. at *4. Application of the fraudulent joinder standard on its face demonstrated that the church and its corporate entities failed to meet their burden. Id.

In Hebert v. Thorton, that court also considered the issue of whether the LDS Church, as a secular organization, separate and distinct from the incorporated aspect of the church corporation, could be deemed an "unincorporated

7

association" for purposes of establishing diversity jurisdiction.  No. CIV.A. 12-0607, 2014 WL 896795, at *5 (E.D. La. Mar. 6, 2014).  The court concluded that the addition of the LDS Church was clearly an attempt of fraudulent joinder as the church corporation admitted on the record that it was the plaintiff's employer, and that LDS is a non-diverse, spiritual organization without assets, money, or a representative for which it would use during trial.  Id. at *7.  However, this case did not apply the TUUNAA and instead applied Louisiana law.

In a Texas Supreme Court case, the church there argued the inverse of what LCMS and the Synod contend here.  There, the church complained that the lower courts erred in abating, and subsequently dismissing, its action against a private company "because that lawsuit belonged to [the church] rather than to a similarly-named, nonprofit corporation."  Christi Bay Temple v. GuideOne Specialty Mut. Ins. Co., 330 S.W.3d 251, 252 (Tex. 2010).  The church submitted that it brought its suit as an unincorporated religious association because that is how it has always operated.  Id. at 252–53.  The insurance company argued, as LCMS and the Synod argue here, that "the church ceased to exist as an [unincorporated] association in 1980 when the non-profit corporation, bearing the same name and a similar affiliation with the Pentecostal Church of God, was created."  Id. at 253.  The defendant claimed that "upon becoming a corporation the church lost the capacity to litigate as an unincorporated association."  Id.  The

Texas Court found that there was no evidence that the church lacked capacity, including any evidence that the church transferred any property or assets to the non-profit or conducted any activity or ministry as a non-profit corporation.  Id.

The Court concludes it is not against Texas law to recognize the Synod as an unincorporated association.  Indeed, the Texas Supreme Court has also recognized that churches may be deemed an unincorporated association pursuant to the TUUNAA, even where the church creates a corporation for the purposes of acquiring property.  See Episcopal Diocese of Fort Worth v. Episcopal Church, 602 S.W.3d 417, 421, 430 (Tex. 2020).  Here, unlike Hebert, the Synod does have a "legal representative" capable of representing the Synod as an unincorporated association, as dictated in the Synod's Bylaws.  (See Dkt. # 11-2 at 95) ("The Board of Directors of the Synod is the legal representative of the Synod and the custodian of all the property of the Synod.").

LCMS spends a considerable amount of its objections discussing the underlying intent and general purposes of the TUUNAA.  (See Dkt. # 58 at 6–13.) According to LCMS, "step one of TUUNAA is to determine if the alleged 'unincorporated nonprofit association' is already incorporated.  If so, there is no step two." (Id. at 13.)  The Court does not read TUUNAA as implementing such a requirement.  When construing a Texas statute, the Fifth Circuit abides by the same rules of statutory construction applied by Texas courts.  Wright v. Ford Motor

Co., 508 F.3d 263, 269 (5th Cir. 2007). "[I]t is a cardinal rule in Texas that a court construes a statute, 'first by looking to the plain and common meaning of the statute's words.'" Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999) (quoting Liberty Mut. Ins. Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex. 1998)). According to Texas courts, "[i]f the statutory language is unambiguous, the judge's inquiry is at an end." Gonzalez v. Guilbot, 315 S.W.3d 533, 540 (Tex.2010). Clear text is assumed to be determinative of legislative intent. Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009).

Applying those principles, the plain language of the Texas Business Organization Code states that a "[n]onprofit association" means an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose. Tex. Bus. Orgs. Code § 252.001. This definition may include religious organizations, such as a church. See Tex. Bus. Orgs. Code § 2.002 (stating that the purpose of a nonprofit entity may include "religious" purposes). LCMS is a Missouri nonprofit corporation. (Dkt. # 11-2 at 2) (2023 case). The Synod is not. While LCMS may act *on behalf* of the Synod, it is *not* the Synod itself. In other words, the two entities are not one and the same. (See id. at § 1.2.1(f)&(v)) (defining "Synod" and "Corporate Synod" separately). Therefore, it is an appropriate application of

unambiguous Texas law that the Synod may be classified as an unincorporated nonprofit association as the Synod is an organization existing for a common, nonprofit purpose.  (See Dkt. # 12-2 at 3) (the Synod defining itself as an association).

Next, the Court concludes the Recommendation does not violate the internal affairs doctrine.  Rule 17(b) provides that—with certain exceptions not applicable here—the determination of whether a party, other than a corporation or an individual, has the capacity to sue or be sued "shall be determined by the law of the state in which the district court is held[.]"  Fed. R. Civ. P. 17(b).  Texas law expressly permits unincorporated associations, including religious non-profits, to sue or be sued.  See Tex. R. Civ. P. 28 ("Any . . . unincorporated association . . . may sue or be sued in its . . . common name for the purpose of enforcing for or against it a substantive right"); see also Tex. Bus. Orgs. Code § 252.007 ("A nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial . . . proceeding[.]").  The Court need not look to Missouri law, where LCMS is incorporated, to determine whether the Synod has the capacity to be sued. The lawsuits are in the Western District of Texas; therefore, Texas law applies.

Therefore, the Court **OVERRULES** LCMS's objection under Texas law and the internal affairs doctrine.

B.     First Amendment Objection

11

LCMS argues the finding that the Synod "is an unincorporated nonprofit association civil law entity answerable to the secular authority of man" violates the First Amendment and Church Autonomy Doctrine.  (Dkt. # 58 at 20) (2023 case).  LCMS maintains that the Synod does not exist as a civil entity because it says so in the Synod's constitution and bylaws.  (Dkt. # 23 at 6) (2023 case).

The First Amendment forbids government intrusion in "matters of church government" and secures church autonomy for internal management decisions that are essential to the institution's central mission.  Our Lady of Guadalupe Sch. v. Morrissey-Berru, 591 U.S. 732, 746 (2020).  However, "[t]he First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships."  McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc., 966 F.3d 346, 348 (5th Cir. 2020) (internal quotations omitted).

"A court may exercise jurisdiction over a controversy if it can apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government."  In re Lubbock, 624 S.W.3d 506, 513 (Tex. 2021).  Under the neutral-principles methodology, "courts decide non-ecclesiastical issues such as

property ownership based on the same neutral principles of law applicable to other entities, while deferring to religious entities' decisions on ecclesiastical and church polity questions." Id. (citing Masterson v. Diocese of Nw. Tex., 422 S.W.3d 594, 596 (Tex. 2013)). "[C]ourts should consider not only whether a neutral principle exists without regard to religion, but also whether the application of neutral principles would impose civil liability upon a church for complying with its own internal rules and regulations or resolving a religious matter." In re Lubbock, 624 S.W.3d at 513.

The Supreme Court has previously declined to answer the difficult question as to the degree to which the First Amendment permits civil authorities to question a religious body's own understanding of its structure and the relationship between associated entities. Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano, 589 U.S. 57, 67 (2020) (Alito, J., concurring). Asserting a violation of the religious autonomy doctrine, the church in Acevedo Feliciano claimed, "the Free Exercise and Establishment Clauses of the First Amendment require courts to defer to 'the Church's own views on how the Church is structured.'" Id. at 62. The church argued that courts must follow the church's lead in recognizing the separate legal personalities involved. Id. Had the church been recognized as a "legal personality", the church would have been required to make payments of benefits for a pension plan for employees of its Catholic school.

Id. at 59.  Concluding that the Court of First Instance lacked jurisdiction to issue the payment and seizure orders, the Supreme Court did not reach the First Amendment argument.  Id. at 63.  Thus, there is no clear case law requiring courts to defer to a church's unilateral decision that it is not a civil entity.

LCMS contends that if adopted, the "[R]ecommendation would completely rewrite and restructure the chosen polity and governance of a religious organization."  (Dkt. # 58 at 20) (2023 case).  According to LCMS, Synod's chosen polity and governance structure compartmentalizes the ecclesiastical and spiritual matters of the global congregations for the Synod's purview while, on the other hand, creates LCMS to engage and interact with civil secular society on all other matters, including this lawsuit.  (Id. at 24.)

CTX responds that this is not a case in which the nature of claims and relief sought would require judicial interference in how churches conducted internal matters from religious employment to doctrinal compliance.  (Dkt. # 59 at 16) (2023 case).  CTX further claims that LCMS does not provide a single case in which the Church Autonomy Doctrine has barred the application of neutral principles of law to questions of capacity.  (Id. at 17.)

LCMS relies on Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 713 (1976) to support its First Amendment objection.  In Milivojevich, the Supreme Court held that "civil courts are bound to

14

accept the *decisions of the highest judicatories* of a religious organization of
hierarchical polity on matters of discipline, faith, internal organization, or
ecclesiastical rule, custom, or law." Id. at 713, 725 (emphasis added). In other
words, the holding specifically addressed that when ecclesiastical tribunals are
created to decide disputes over the government and direction of subordinate
bodies, civil courts accept their decisions as binding upon them. Id. at 725. There,
the dispute centered over control of the Serbian Eastern Orthodox Diocese and the
reorganization of the church. Id. at 699, 708. Thus, there is at least clear law that a
church's final adjudication on an ecclesiastical decision is binding on civil courts.

The Court agrees that the purpose of the Magistrate Judge's inquiry
into the corporate status, or lack thereof, of the Synod was to externally determine
whether it has the capacity to be sued. The Recommendation does not alter or
reorganize the Synod's internal governance. The lawsuits at issue involve a
dispute regarding the Synod's interest in CTX's new campus property, which is a
pure civil-law controversy. (Dkt. # 52 at 17) (2023 case). The campus property
dispute revolves around LCMS's alleged voluntary waiver of its reversionary
interest and CTX's alleged refusal to recognize that interest. (Id.) Thus, the
resolution of the property dispute will not involve any change to the Synod's
governing documents, nor will it require any inquiry into religious doctrine. (Id. at
18.) The substance and nature of the property claims are not so inextricably

intertwined with matters of doctrine or church governance so as to apply ecclesiastical abstention.  In re Lubbock, 624 S.W.3d at 514.

LCMS also asserts that although it relied extensively on the Declaration of Rev. Dr. John Sias, who serves as Secretary for LCMS in its Response to Motion to Dismiss (Dkt. # 23-1) (2023 case), the Magistrate Judge did not mention it in his Recommendation.  (Dkt. # 58 at 29) (2023 case).  LCMS cites Dr. Sias's declaration as support for its arguments that Synod does not exist as a separate civil entity from LCMS and to explain the ecclesiastical meanings in the governance documents.  (Id.)  In reviewing not only the Synod's constitution and bylaws, but also the LCMS Board of Director's Policy Manual ("LCMS Policy Manual"), the Court finds that even LCMS recognizes the Synod's capacity to be sued.  For instance, in the LCMS Policy Manual, Section 4.18.4–Responding to Litigation provides the following:

- The LCMS Board of Directors recognizes that any response to litigation brought against the ***Synod or Corporate Synod*** [LCMS] may impact the Synod, its agencies, and members. Cooperation in such responses is therefore a necessity.  (Id. at § 4.18.4.2)
- The Chief Administrative Officer, in consultation with the ***Synod's general counsel*** and when necessary the Executive Committee of the Board, shall select legal counsel ***to represent the Synod in each case of litigation brought against the Synod or an agency of Corporate Synod.*** General counsel shall supervise all responses to litigation brought against the Synod, including without limitation all filings, discovery, and negotiating settlements.

(Dkt. # 13-5 at 62) (2023 case). LCMS itself recognizes that litigation may be brought against either the Synod or LCMS (Corporate Synod). As such, a finding that the Synod has the capacity to be sued does not violate the Synod's decision regarding polity and governance.

Therefore, the Court **OVERRULES** LCMS's objection to the Magistrate Judge's finding that the Synod is an unincorporated association and has the capacity to sue or be sued in Texas. However, the inquiry does not end here in deciding whether to adopt the Recommendation. The Court next addresses whether the Synod holds the substantive rights at issue here to be deemed a real party in interest, real party in controversy, and an indispensable party for Rule 17(a) purposes.

II.    Whether the Synod Holds the Substantive Rights

The Recommendation concludes that the Synod holds the substantive rights at issue here and LCMS cannot show that it possesses rights with respect to Defendants that are independent of the Synod. (Dkt. # 52 at 8) (2023 case). Therefore, the Magistrate Judge recommended the 2023 action should be dismissed for failure to prosecute in the name of the real party in interest. (Id. at 9.)

Federal Rule of Civil Procedure 17(a) requires that an action "be prosecuted in the name of the real party in interest," which is defined as the party "holding the substantive right sought be enforced," although "not necessarily the

[party that] will ultimately benefit from the recovery." In re Signal Intern., LLC, 579 F.3d 478, 487 (5th Cir.2009) (quoting Farrell Constr. Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir.1990)).  "The purpose of this requirement 'is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right.'" Id. (quoting Farrell, 896 F.2d at 142).

LCMS objects to the finding that the Synod holds the substantive rights at issue here on the basis that it is a purely ecclesiastical religious entity, and it incorporated LCMS as its civil law entity to assert and respond to all civil law claims.  (Dkt. # 58 at 27) (2023 case).  However, LCMS does not object to the reasoning behind the Magistrate Judge's finding.

In the Recommendation, the Magistrate Judge concludes that even if LCMS held title to the real property at issue in this case, it would belong to the Synod.  (Dkt. # 52 at 8) (2023 case).  The Synod's bylaws acknowledge that LCMS (as "Corporate Synod") may hold title to certain property, but that property is considered property of the Synod.  (See Dkt. # 11-2 at 3) (2023 case) (defining "property of the Synod" as "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod").  Indeed, in the LCMS

18

Policy Manual, Section 6.3.3–Property of Synod held by Colleges, Universities, and Seminaries as defined in Bylaw 1.2.1(r), LCMS asserts "Each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of **reverter in favor of the Synod** in such form and stating such conditions as shall be established by the Board of Directors of the Synod." (Dkt. # 13-5 at 80) (2023 case). Resolution 4-04 also provides: "The Synod owns the properties of all agencies of the Synod, including its institutions of higher education, regardless of how such properties are titled (Bylaw 3.51 i)." (Dkt. # 13-6 at 1) (2023 case). Thus, the relief sought in these lawsuits would necessarily include a declaration clarifying either LCMS and/or the Synod's interest, if any, in CTX's new campus property. (Dkt. # 52 at 15) (2023 case).

The Magistrate Judge further reasoned that LCMS fails to demonstrate that it is a party to any contract between CTX and the Synod, why any Defendant owes fiduciary duties to LCMS as opposed to the Synod, or why duties any Defendant owes under that Code flow to LCMS as opposed to the Synod. (Id. at 8–9.)

With respect to the contract and fiduciary claims, the Amended Complaint makes clear that the Synod is the party that would benefit from a declaration to enforce its rights against CTX. (See Dkt. # 11 at 32) (2023 case)

19

("[U]ntil and unless this Court affords LCMS the declaratory relief requested herein, the unlawful CTX Amendments have caused, and will continue to cause, *loss to Synod* for the CTX Amendments purportedly and ***wrongfully strip Synod of all its rights*** under the CTX governance documents.")  (emphasis added).

Therefore, the Court **OVERRULES** LCMS's objection to the finding that the Synod holds the substantive rights in the lawsuits.

III.    Whether the Synod is a Citizen of Texas for Diversity Jurisdiction

A defendant may remove a civil action from state court to federal court if the federal court has original jurisdiction over the case.  28 U.S.C. § 1441(a).  District courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Diversity jurisdiction requires complete diversity—meaning that no plaintiff may share citizenship with any defendant. Flagg v. Stryker Corp., 819 F.3d 132, 136 (5th Cir. 2016).

Because the Magistrate Judge found that the Synod is an unincorporated association it is a citizen of every state in which its members reside.  (Dkt. # 52 at 13) (2023 case).  LCMS objects to the diversity finding on the general basis (again) that the Synod is not an unincorporated association.  (Dkt. # 58 at 29) (2023 case).  As discussed above, the Court concludes that the Synod is

classified as an unincorporated association under Texas law.  Accordingly, this objection is **OVERRULED**.

The Recommendation found that LCMS could not show that the Synod is not a citizen of Texas for the purposes of diversity jurisdiction.  (Dkt. # 52 at 13) (2023 case).  In the Fifth Circuit, it is well-settled that an unincorporated association is deemed a citizen of every state in which its members reside.  Hummel v. Townsend, 883 F.2d 367, 369 (5th Cir. 1989).  Here, the Synod admits it has members (i.e., member congregations and individuals) in Texas. (Dkt. # 11 at 16) (2023 case).  LCMS does not specifically object to this finding. Therefore, the Court finds the Recommendation that the Synod is a Texas citizen is not clearly erroneous or contrary to law.

IV.    Whether the Improper Joinder Doctrine Applies

When removal is premised on diversity jurisdiction, the presence of an improperly joined non-diverse defendant will not defeat jurisdiction.  Salazar v. Allstate Tex. Lloyd's, Inc., 455 F.3d 571, 574 (5th Cir. 2006).  A defendant establishes improper joinder by demonstrating the plaintiff's inability to state a viable claim against the non-diverse defendant.  Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder," though the Court may "pierce the pleadings and conduct a summary inquiry" where plaintiff has

"misstated or omitted discrete facts that would determine the propriety of joinder."
Id.  Any doubts as to the propriety of removal are resolved in favor of remand.
Smith v. Bank of Am. Corp., 605 F. App'x 311, 314 (5th Cir. 2015).

In conducting a 12(b)(6)-type analysis, the Magistrate Judge found
that CTX has plausibly stated a claim for declaratory judgment against the Synod
regarding its alleged reversionary interest in CTX's new campus property.  (Dkt.
# 52 at 14) (2023 case).  LCMS does not object to this finding.

Applying Texas law, the Magistrate Judge reasoned that a declaratory
judgment is available when (1) there is a justiciable controversy that is (2) real and
substantial and (3) capable of resolution by the declaration sought.  Sw. Elec.
Power Co. v. Lynch, 595 S.W.3d 678, 683-86 (Tex. 2020).  Moreover, the
Magistrate Judge concluded that Synod's status as a religious denomination does
not bar CTX's suit.  (Dkt. # 52 at 16) (2023 case).  The Court finds this analysis is
not clearly erroneous or contrary to law.

In sum, the Recommendation provides that (1) the Synod is an
indispensable party that must be joined, (2) the Synod's joinder as a Texas entity
defeats this Court's diversity jurisdiction, and (2) CTX has plausibly stated a state-
law claim against the Synod.  Accordingly, the magistrate recommends that the
Court grant the motion to dismiss, (Dkt. # 13) (2023 case) and motion to remand
(Dkt. # 5) (2024 case).

CONCLUSION

For the reasons above, the Court **ADOPTS** U.S. Magistrate Judge Dustin M. Howell's Report and Recommendation in full as the opinion of this Court.  (Dkt. # 52) (2023 case).  Defendants Concordia University Texas, Donald Christian, and Christopher Bannwolf's Motion to Dismiss in case 1:23-cv-1042-DAE (Dkt. # 13) is **GRANTED WITHOUT PREJUDICE**.

Plaintiff Concordia University Texas's Motion to Remand in related case 1:24-cv-176-DAE (Dkt. # 5) is **GRANTED**.  Further, the Court **REMANDS** this case to the 353rd District Court of Travis County, Texas for lack of subject-matter jurisdiction**.**

The Clerk is **INSTRUCTED** to close both cases.

**IT IS SO ORDERED.**

**SIGNED**: Austin, Texas, February 3, 2025.

_____
David Alan Ezra
Senior United States District Judge